**POMERANTZ LLP**
Josh Silverman (*pro hac vice* forthcoming)
Louis C. Ludwig (NJ 043582008)
10 South LaSalle St., Ste. 3505
Chicago, IL 60603
Telephone: (312) 377-1181
jpsilverman@pomlaw.com
lcludwig@pomlaw.com

**ROCHE FREEDMAN LLP**
Ivy T. Ngo (*pro hac vice*)
Velvel (Devin) Freedman (*pro hac vice*)
Constantine P. Economides (*pro hac vice* forthcoming)
1 SE 3rd Ave., Suite 1250
Miami, Florida 33131
Telephone: (305) 971-5943
ingo@rochefreedman.com
vel@rochefreedman.com
ceconomides@rochefreedman.com

*Counsel for Lead Plaintiff and the Class*

- additional counsel on signature page –

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CORMEDIX INC. SECURITIES LITIGATION | Case No. 2:21-cv-14020-JXN-CLW |
| | <u>CLASS ACTION</u> |
| | Hon. Julien Xavier Neals |
| This Document Relates To: | **Motion Day: June 6, 2022** |

## LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS .............................................................................4

    A. CorMedix's Core Focus on Neutrolin and Bid for FDA Approval ...........4

    B. Defendants Continue to Deceive Investors About the NDA .....................7

    C. Investors Slowly Learn the Truth.............................................................9

ARGUMENT ...............................................................................................11

I.    Plaintiff Adequately Alleges Violations of § 10(b) of the
Exchange Act.......................................................................................11

    A. Standards on Rule 12(b)(6) Motions to Dismiss.....................................11

    B. The Complaint Alleges § 10(b) Violations Regarding DefenCath ..........13

        1.    The Complaint sufficiently identifies material
misrepresentations and omissions regarding DefenCath ...............13

            a.    Misrepresentations and omissions about the status of facilities
manufacturing Defencath..........................................................13

            b.    Misrepresentations and omissions about being
"on track." ...............................................................................15

            c.    Misrepresentations and omissions regarding likelihood
of approval ...............................................................................17

            d.    Misrepresentations regarding delays and risks .........................18

            e.    Defendants' misrepresentations and omissions do not
qualify as opinions or forward-looking statements ..................22

        2.    The Complaint adequately alleges Defendants' scienter ..............24

            a.    That Defendants held themselves out to investors as having
knowledge of the facts they misrepresented
supports scienter.......................................................................25

            b.    Defendants' access to facts contradicting their public
statements supports scienter......................................................27

i

c.    Core operations theory supports scienter...................................29

d.    Defendant Armstrong's experience bolsters scienter ...............30

e.    Defendants' SOX certifications bolster scienter.......................31

f.    No plausible competing inference ............................................31

3.    The Complaint adequately alleges loss causation..........................33

II.    Plaintiff Adequately Alleges §11 Violations...................................................35

A.    The Securities Act Places a Minimal Pleading Burden on
Plaintiff..................................................................................................35

B.    Plaintiff's Securities Act Claims Do Not Sound in Fraud .................36

C.    Plaintiff Adequately Alleges Falsity in the Offering .........................38

CONCLUSION ...............................................................................................................40

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP,*
532 F. Supp. 3d 189 (E.D. Pa. 2021)......................................................................27

*Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*,
503 F.3d 256 (3d Cir. 2007) .................................................................................26

*Bauer v. Eagle Pharm., Inc.*,
No. CV 16-3091(JLL), 2017 WL 2213147 (D.N.J. May 19, 2017)...................24

*Bauer v. Prudential Fin., Inc.*,
No. CIV.A. 09-1120 (JLL), 2010 WL 2710443
(D.N.J. June 29, 2010) .....................................................................................37, 38

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................11

*Carmack v. Amaya Inc.*,
258 F. Supp. 3d 454 (D.N.J. 2017).......................................................................12

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
No. CV 17-10467, 2019 WL 3451523 (D.N.J. July 31, 2019) ..........................29

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)...............................................................................................34

*Eagle Sys., Inc. v. Asaro-Angelo*,
No. CV 18-11445 (MAS) (DEA), 2019 WL 3459088
(D.N.J. July 31, 2019).............................................................................................26

*EP Medsystems, Inc. v. EchoCath, Inc.*,
235 F.3d 865 (3d Cir. 2000) .................................................................................34

*Fleisher v. Standard Ins. Co.*,
679 F.3d 116 (3d Cir. 2012) ................................................................................11

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335 (E.D. Pa. 2014)...............................................................*passim*

*Gaer v. Educ. Mgmt. Corp.*,
   No. CIV.A. 10-1061, 2011 WL 7277447 (W.D. Pa. Aug. 30, 2011)................37

*Gaer v. Educ. Mgmt. Corp.*,
   No. CIV.A. 10-1061, 2011 WL 7277578 (W.D. Pa. Sept. 29, 2011) ...............37

*Gargiulo v. Isolagen, Inc.*,
   527 F. Supp. 2d 384 (E.D. Pa. 2007)....................................................15

*Hall v. Johnson & Johnson*,
   No. CV 18-1833 (FLW), 2019 WL 7207491 (D.N.J. Dec. 27, 2019) .........25, 29

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983)...........................................................................35

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
   No. 2:20-cv-2155-SRC-CLW, 2021 WL 4191467
   (D.N.J. Sept. 15, 2021) ...........................................................28, 29, 30

*In re Aetna, Inc. Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010) ...............................................................15

*In re Amarin Corp. PLC Sec. Litig.*,
   689 F. App'x 124 (3d Cir. 2017) ..........................................................23

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
   No. 05-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007) ....................................38

*In re Bristol-Myers Squibb Sec. Litig.*,
   No. Civ. A 00–1990(SRC), 2005 WL 2007004
   (D.N.J. Aug. 17, 2005)....................................................................23, 24

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .............................................................12

*In re Celgene Corp. Sec. Litig.*,
   No. CV 18-4772, 2019 WL 6909463 (D.N.J. Dec. 19, 2019).........................17

*In re Cigna Corp. Sec. Litig.*,
   No.-Civ-02-8088, 2005 WL 3536212 (E.D. Pa. Dec. 23, 2005).......................16

*In re Digital Island Sec. Litig.*,
   357 F.3d 322 (3d Cir. 2004) ...............................................................16

iv

*In re: Enzymotec Sec. Litig.*,
  No. CV-14-5556 (JLL)(MAH), 2015 WL 8784065
  (D.N.J. Dec. 15, 2015) ...............................................................................22, 29

*In re ForceField Energy Inc. Sec. Litig.*,
  No. 15 CIV. 3020 (NRB), 2017 WL 1319802
  (S.D.N.Y. Mar. 29, 2017) ................................................................................28

*In re Galena Biopharma, Inc. Sec. Litig.*,
  2021 U.S. Dist. LEXIS 1851 (D.N.J. Jan. 5, 2021).........................................34

*In re Genta, Inc., Sec. Litig.*,
  No. CIV.A. 04-2123 (JAG), 2005 WL 2416970
  (D.N.J. Sept. 30, 2005) ...................................................................................28

*In re HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021) ..............................................................39

*In re Honeywell Int'l, Inc. Sec. Litig.*,
  182 F. Supp. 2d 414 (D.N.J. 2002).................................................................28

*In re Proshares Trust II Sec. Litig.*,
  No. 19 Civ. 886, 2020 WL 71007 (S.D.N.Y. Jan. 3, 2020) ..............................39

*In re PTC Therapeutics, Inc., Sec. Litig.*,
  No. 16-1124 (KM) (MAH), 2017 WL 3705801
  (D.N.J. Aug. 28, 2017)........................................................................12, 25, 28

*In re Rediff.com India Ltd. Sec. Litig.*,
  358 F. Supp. 2d 189 (S.D.N.Y. 2004) ..............................................................39

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015) ................................................................24

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) .......................................................13, 35, 36, 37, 38

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  824 F. Supp. 2d 1214 (D.N.M. 2011)................................................................39

*In re Toronto-Dominion Bank Sec. Litig.*,
  No. CV 17-1665 (NLH/JS), 2018 WL 6381882 (D.N.J. Dec. 6, 2018)............31

v

*In re Urban Outfitters, Inc., Sec. Litig.*,
  103 F. Supp. 3d 635 (E.D. Pa. 2015)......................................................34

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  No. CV 15-7658 (MAS) (LHG), 2017 WL 1658822
  (D.N.J. Apr. 28 2017) ............................................................................38

*In re Viropharma Inc. Sec. Litig.*,
  21 F. Supp. 3d 458 (E.D. Pa. 2014)......................................................22

*In re Viropharma, Inc. Sec. Litig.*,
  No. CIV.A. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003)....................33

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996) ....................................................................21

*In re Wilmington Tr. Sec. Litig.*,
  29 F. Supp. 3d 432 (D. Del. 2014)....................................................33, 34

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ...................................................12, 24, 25, 27

*Martin v. GNC Holdings, Inc.*,
  757 F. App'x 151 (3d Cir. 2018) ............................................................29

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)............................................................................11, 13

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007) ..................................................................33

*McDermid v. Inovio Pharms., Inc.*,
  520 F. Supp. 3d 652 (E.D. Pa. 2021)......................................................30

*Medtronic Ave, Inc. v. Bos. Sci. Corp.*,
  No. CIV.A. 98-478-SLR, 2001 WL 652016 (D. Del. Mar. 30, 2001) ...............12

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
  681 F.3d 114 (2d Cir. 2012) ..................................................................39

*Roofer's Pension Fund v. Papa*,
  No. CV 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) .........................26

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
  351 F. Supp. 3d 874 (E.D. Pa. 2018)................................................17, 18, 25, 27

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
  348 F. Supp. 3d 313 (S.D.N.Y. 2018) ............................................................23

*Skiadas v. Acer Therapeutics Inc.*,
  No. 1:19-CV-6137-GHW, 2020 WL 4208442 (S.D.N.Y. July 21, 2020) .........18

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharms. Int'l, Inc.*,
  No. CV 16-5034 (MAS) (LHG), 2018 WL 395730
  (D.N.J. Jan. 12, 2018) ...................................................................................27

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................12, 24, 27

*Tomaszewski v. Trevena*, Inc.,
  482 F. Supp. 3d 317 (E.D. Pa. 2020).........................................................17, 32

*U.S. ex rel. Wilkins v. United Health Grp., Inc.*,
  659 F.3d 295 (3d Cir. 2011) ..........................................................................11

*Utesch v. Lannett Co., Inc.*,
  385 F. Supp. 3d 408 (E.D. Pa. 2019)..............................................................26

## Rules

15 U.S.C. § 78j...............................................................................................13, 37

15 U.S.C. § 77k...................................................................................................35

15 U.S.C. §78t.....................................................................................................37

15 U.S.C. § 78u................................................................................................12, 24

17 C.F.R. § 229.303(a).........................................................................................39

17 C.F.R. § 240.1 b-5...........................................................................................37

Fed. R. Civ. P. 9(b) .........................................................................................11, 36

## Other Authorities

*Cormedix Inc. Announces Resubmission of New Drug Application for Defencath*, CORMEDIX INC. (Feb. 28, 2022), https://www.cormedix.com/cormedix-inc-announces-resubmission-of-new-drug-application-for-defencath/ ....................11

Lead Plaintiff John V. Levon ("Plaintiff"), hereby opposes the respective motions to dismiss filed by Defendants as follows:[1]

## **PRELIMINARY STATEMENT**

During the Class Period, Defendants inflated the price of CorMedix stock by touting the approval prospects of the Company's flagship product, an antibacterial and antifungal catheter lock solution called "Neutrolin" (also called "DefenCath" in the U.S.). Defendants then capitalized on this stock price increase by conducting a public offering on July 29, 2020 and an "At the Market" offering on November 27, 2020 (the "Offering"), collectively raising almost $50 million. However, the New Drug Application ("NDA") submitted confidentially to the U.S. Food and Drug Administration ("FDA") on behalf of DefenCath showed a critical manufacturing defect that was hidden from investors: the manufacturing facility was unable to accurately withdraw the labeled volume from vials of the solution, resulting in

---

[1] The "Cormedix Defendants" are CorMedix Inc. ("CorMedix" or the "Company") and the "Officer Defendants", who are comprised of Khoso Baluch, Robert Cook, Matthew David, Phoebe Mounts, and John L. Armstrong. The "Director Defendants" are Janet Dillione, Myron Kaplan, M.D., Alan W. Dunton, M.D., Steven Lefkowitz, Paulo F. Costa, and Greg Duncan. The "Underwriter Defendants" are B. Riley Securities, Inc. and Needham & Company, LLC. Paragraph citations ("¶") refer to the numbered paragraphs of Plaintiff's Consolidated Amended Class Action Complaint ("Complaint") (ECF No. 43). "CDM" references are to the pages of the Cormedix Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint (ECF No. 57-1). "UDM" references are to the pages of the Underwriter Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint (ECF No. 61-1). Unless otherwise noted, internal citations are omitted and emphasis is added.

1

inconsistent fill volume. This was catastrophic given the life-or-death importance of exactitude in drug administration. Eventually, these known deficiencies resulted in a Complete Response Letter (or "CRL") rejecting the DefenCath NDA. The CRL and subsequent revelations caused CorMedix's share price to drop, damaging Plaintiff and other investors.

Plaintiff's claims under the Securities Exchange Act of 1934 ("Exchange Act"), which relate to the Class Period (October 16, 2019 and September 6, 2021, inclusive) are also sufficiently pled: ¶¶352-63 address fraudulent misrepresentations made by the CorMedix Defendants (set forth in detail at ¶¶227-327). Meanwhile, ¶¶364-68 allege that the Officer Defendants were secondarily liable as control persons for the misrepresentations identified and alleges the factual basis for each control relationship.

Plaintiff's claims under the Securities Act of 1933 ("Securities Act") are not subject to the enhanced pleading requirements of either Rule 9(b) or the Private Securities Litigation Reform Act of 1995 ("PSLRA"), but are sufficiently alleged to satisfy any pleading standard: ¶¶162-74 explain that the Offering Documents for the Offering (Registration Statement, Prospectus Supplement, and the Company's other public filings incorporated by reference therein) were materially false and misleading, and why each named Defendant is strictly liable for misrepresentations and omissions therein. Further, ¶¶175-81 allege that certain Defendants were also

2

secondarily liable due to their control over the corporate entity or their own subordinates, and plausibly allege the nature of such control.

It is not disputed that the CorMedix Defendants submitted the DefenCath NDA, nor is it open to question that these same Defenants were required by FDA regulations to know the inner workings of the Company's designated manufacturer. Even so, Defendants misrepresented or omitted the existing, but undisclosed, manufacturing conditions and risks plaguing the DefenCath NDA from their SEC filings, public statements, and Offering Documents. In their respective motions, Defendants rely on the same misleading language challenged in the Complaint to argue that their Class Period statements regarding the FDA status of CorMedix's flagship product were no more than opinions, aspirational conjecture, or mere bluster. Binding precedent, however, rejects the notion that Defendants can insulate their statements from liability with nothing more than artful phrasing.

In making their public statements, the CorMedix Defendants possessed the requisite state of mind (or *scienter*) for recklessness under the Exchange Act: they knew facts or had access to information contradicting those statements. Lastly, Plaintiff's loss causation allegations to easily satisfy the minimal pleading burden than the law imposes at this stage. All that is required is for Plaintiff to show a causal connection between Defendants' conduct and his (and the Class's) losses, which he has done. Accordingly, Defendants' motions should be denied.

3

## STATEMENT OF FACTS

**A.    CorMedix's Core Focus on Neutrolin and Bid for FDA Approval.**

At all relevant times, CorMedix has primarily focused on developing Neutrolin a/k/a DefenCath, an antibacterial and antifungal solution designed to prevent catheter-related bloodstream infections and thrombosis in patients in clinical settings—a catheter lock solution ("CLS"). ¶2. CorMedix has always manufactured Neutrolin through third-party commercial manufacturing organizations called "CMOs." ¶3. In late 2013, the Company first met with the FDA to discuss its plan to market Neutrolin in the U.S. ¶80. Since then, the plan has continued apace.

Drug sponsors – like CorMedix – seeking approval to market a new drug in the U.S. must submit an NDA to the FDA. ¶5. After successful clinical trials are completed, an NDA must successfully demonstrate Chemistry, Manufacturing and Controls ("CMC") to ensure that the drug is consistently effective, safe, and high quality. ¶¶7, 81. The CMC standards must be shown both with respect to the drug itself and the facility manufacturing the drug. ¶7. Pursuant to FDA-approved industry guidance, the drug sponsor "is ultimately responsible to ensure processes are in place to assure the control of outsourced activities and quality of purchased materials." ¶83. Among them, a drug sponsor that chooses to outsource manufacturing is responsible for evaluating and monitoring its own CMO. ¶¶88-93.

To examine a drug manufacturer's compliance with cGMP (Good

4

Manufacturing Practice) regulations and determine if it has the necessary facilities, equipment, and ability to manufacture the drug, the FDA may perform a pre-approval inspection ("PAI"), which includes the manufacturer obtaining approval for its written procedures related to production, quality control, and quality assurance, as well as verification of these procedures. ¶¶33, 95-96. Even at the height of the COVID-19 pandemic, the FDA affirmed "CGMP requirements remain[ed] in effect during the COVID-19 public health emergency." ¶¶97-98.

CorMedix began to evaluate and select the CMO for its planned entry into the U.S. market in late 2016. ¶103. After contacting and having initial discussions with thirteen potential CMOs in the U.S. and internationally, conducting site visits, doing initial quality system reviews and reviewing proposals from several of those thirteen, the Company ultimately selected – but did not publicly disclose – its CMO in 2017. *Id.*

On October 16, 2019, the Company announced a "[s]uccessful CMC Interaction with the FDA" and stated that "[t]he FDA was supportive of Neutrolin's proposed manufacturing program, including … the container closure and testing, and indicated that it will conduct a thorough review of all the CMC information as well as assess the commercial readiness of the various manufacturing facilities at the time of NDA filing" and that "[n]o further CMC meetings with FDA [we]re planned prior to NDA submission." ¶104.

October 16, 2019 marks the beginning of the Class Period, because on that day, Defendants began to misrepresent or omit that deficiencies existed at the facility manufacturing DefenCath and/or with respect to the process for withdrawing the labeled volume from the vials such that the fill volume was inconsistent, as well as the likely consequences of those concealed deficiencies – such as non-approval of the DefenCath NDA. ¶33.

On November 14, 2019, during an investor call, Defendant Armstrong again claimed that "[t]he FDA was supportive of Neutrolin's proposed manufacturing program…." ¶184. This false statement was intended to and did portray a misleadingly positive overall view of the CMC dialogue with the FDA, encouraging investors to gloss over a cryptic reference during the call to a request for "some additional data which [the Company was] working to complete" or the fact that, as was typical,  the FDA planned to "assess the commercial readiness of the various manufacturing facilities at the time of the NDA review." ¶105.

In May 2020, CorMedix formed a wholly-owned subsidiary in Madrid, Spain while the country was beginning to ease its COVID-19 lockdown restrictions, but did not explain why to investors. The reason appears to be that, on information and belief, the manufacturing facility of the Company's CMO is in Madrid, Spain: ROVI Contract Manufacturing, S.L., which specializes in aseptic filling small volume parenterals in pre-filled syringes and vials, with an annual capacity of 180 million

6

syringes and 50 million vials. ¶81.

By July 8, 2020, CorMedix had completed its rolling submission for the DefenCath NDA. It assured investors , assuring investors that it "has not been informed of any delays by the FDA in the review of the NDA" and that it had already in order to complete the NDA, the Company "had to work through the [CMC] information[.]" as part of preparing the NDA. ¶106. Yet at they time they said this, Defendants knew they DefenCath NDA already had numerous review issues. And,Nor did this knowledge stop Defendants exploited the concealment of adverse information to raise over $____ million of much-needed cash at artificially-inflated pricesfrom capitalizing on the Company's positive public image: on July 27, 2020, CorMedix announced its plans to offer shares of its common stock in an underwritten public offering. ¶189. Ultimately, CorMedix offered and sold 5,111,110 shares of common stock. ¶191.

### B.      Defendants Continue to Deceive Investors About the NDA.

When the CorMedix Defendants touted their submission of the DefenCath NDA to the market, they omitted their failure to ensure that it contained all necessary information and/or data, based on well-established regulatory standards and the Company's ongoing dialogue with the FDA, which would have prevented the unnecessary risk – which ultimately came to fruition – of receiving a CRL and delaying the approval process. ¶107. In sum, CorMedix submitted the DefenCath

NDA without first competently verifying its completeness. *Id*.

In November 2020, CorMedix filed with the SEC its Registration Statement for its $100 million "At the Market" (or ATM) Offering, which continued to exploit the false perception that FDA approval was a foregone conclusion. ¶108. The Prospectus Supplement for the Offering incorporated by reference numerous SEC filings containing material falsehood and omissions. ¶111. In addition to these incorporated documents, the CorMedix Defendants continued to manufacture new misinformation concerning, among other things, whether the DefenCath NDA was "on track" for approval, supposedly prospective "risks" that had, in truth, already come to pass, and whether CorMedix's SEC filings fairly presented, "in all material respects, the financial condition and results of operations of the Company." *See e.g.*, ¶¶113, 117-19, 121, 123-25, 135, 139.

As alleged in the Complaint, by the time of the Offering, the Company's CMC program had been considered deficient by the FDA, the FDA notified CorMedix of these concerns, and CorMedix had already submitted additional data to the FDA in an effort to resolve these deficiencies, but such efforts were insufficient. Before the FDA had the time to fully assess the DefenCath NDA, CorMedix benefited from a highly inflated share price. ¶107.

On August 31, 2020, CorMedix issued a press release, announcing the FDA's acceptance for filing and priority review of the DefenCath NDA, setting a PDUFA

date (or review target date) of February 28, 2021. ¶138. The press release announcing the PDUFA date again disclaimed the existence of any review issues. *Id.* On November 27, 2020, CorMedix announced the completion of its November Sales Agreement with the Underwriter Defendants, and the Company filed its Prospectus Supplement for the Offering. ¶194. Between 2020 and early 2021, CorMedix sold approximately $48.5 million worth of securities. *Id.*

## C.    Investors Slowly Learn the Truth.

On March 1, 2021, CorMedix shocked the market by announcing a CRL (or FDA rejection) instead of FDA approval. ¶21. The Company detailed that the "FDA noted concerns at the third-party manufacturing facility after a review of records requested by FDA and provided by the manufacturing facility." ¶281. CorMedix shares promptly fell $8.16 per share, or 54.4%, to close at $6.84 on March 3, 2021. ¶282. Analysts expressed "***surprise as the product has already been in production and commercial in the EU, albeit at limited capacity.***" *Id.*

While the CorMedix Defendants could not avoid disclosing an event as momentous as a CRL, they nevertheless continued to mislead investors into believing: (i) the issues underlying the CRL were minor, so the Company would be able to resubmit the DefenCath NDA in the near future. ¶¶284-90; and (ii) the CorMedix Defendants were "on track" to secure FDA approval. *Id.*; ¶¶292-96.

But on April 14, 2021, CorMedix admitted that it would not be able to

9

resubmit its NDA until the third quarter of 2021 because it had to take additional steps for DefenCath's manufacturing process to meet FDA standards, including "[a]ddressing FDA's concerns regarding the qualification of the filling operation [that] may necessitate adjustments in the process and generation of additional data on operating parameters for manufacture of DefenCath." ¶25. As Defendants' statements had once again proven at odds with reality, CorMedix shares fell in response, this time by 18%. *Id.* Then, after markets closed on May 13, 2021, CorMedix disclosed that it would not be able to resubmit the NDA until ***the fourth quarter of 2021*** because "additional process qualification would be needed with subsequent validation to address the deficiencies[.]" ¶210. At the same time, Defendants doubled down on their claimed ability to resolve the manufacturing deficiencies and resubmit the NDA by the end of the year. ¶211.

Investors thus did not learn the full truth until pre-market, September 7, 2021, when CorMedix disclosed that it "has encountered delays at its third-party [CMO]" and that "the timeline for CorMedix and the CMO to address deficiencies at the facility that are required for resubmission of the DefenCath NDA is uncertain[.]" ¶213. In other words, "CMO delay br[ought] uncertainty to Defencath NDA resubmission timelines[.]" *Id*. On this news, CorMedix's stock price fell over 27%. *Id*. Defendants did not resubmit the NDA until February 28, 2022, a far worse

10

outcome than investors had ever been told.[2]

## ARGUMENT

### III.    Plaintiff Adequately Alleges Violations of § 10(b) of the Exchange Act.

#### A.    Standards on Rule 12(b)(6) Motions to Dismiss

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 n.12 (2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The question is not whether the plaintiff "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). On a Rule 12(b)(6) motion to dismiss, courts will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

For § 10(b) claims, the PSLRA and Federal Rule of Civil Procedure ("Rule") 9(b) impose two additional pleading standards. First, misrepresentations must be alleged with particularity. *See Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242,

---

[2] *See Cormedix Inc. Announces Resubmission of New Drug Application for Defencath*, CORMEDIX INC. (Feb. 28, 2022), https://www.cormedix.com/cormedix-inc-announces-resubmission-of-new-drug-application-for-defencath/.

252-253 (3d Cir. 2009). This does not call for an "exhaustive cataloging of facts," but only allegations sufficient to "provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that a wrong has occurred." *Medtronic Ave, Inc. v. Bos. Sci. Corp.*, No. CIV.A. 98-478-SLR, 2001 WL 652016, at *2 (D. Del. Mar. 30, 2001). Particularity rules are relaxed in situations where, as here, the factual information is peculiarly within defendants' knowledge or control. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

Second, the PSLRA requires that a plaintiff allege facts supporting a strong inference of scienter, *see* 15 U.S.C. § 78u-4(b)(2), though the inference need not be "irrefutable, *i.e.*, of the smoking gun genre, or even the most plausible of competing inferences." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). Instead, a complaint alleges a strong inference of scienter so long as a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. Scienter may be established either by showing either conscious misbehavior or recklessness, and can be satisfied by circumstantial evidence. *In re PTC Therapeutics, Inc., Sec. Litig.*, No. 16-1124 (KM) (MAH), 2017 WL 3705801, at *16 (D.N.J. Aug. 28, 2017). Scienter of executives acting within the scope of employment is imputed to the corporation. *Carmack v. Amaya Inc.*, 258 F. Supp. 3d 454, 468 (D.N.J. 2017).

**B.     The Complaint Alleges § 10(b) Violations Regarding DefenCath.**

12

To plead a claim under § 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx*, 563 U.S. at 37-38; *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 275 (3d Cir. 2006). The Complaint easily satisfies these elements.

**1. The Complaint sufficiently identifies material misrepresentations and omissions regarding DefenCath.**

**a. <u>Misrepresentations and omissions about the status of facilities manufacturing Defencath.</u>**

Plaintiff has properly pled that Defendants made direct misrepresentations about the adequacy of the Company's manufacturer. Just before the Class Period began, Defendant Armstrong claimed to "***understand Neutrolin's manufacturing, technical, analytical processes as well as the quality controls and the systems that go with it.… And importantly, the key members of my staff, including me, have in our past experience, successfully submitted multiple NDAs that were ultimately approved.***" ¶182. At the time, he further claimed, on behalf of the entire Company, to "***understand the importance of manufacturing data and that we are on top of it.***"

Such distortions continued throughout the Class Period, as Defendants

13

publicly claimed, *inter alia*, that:

- "CorMedix has been manufacturing and selling Neutrolin outside the US for the last five years. We've successfully carried out technical transfer and validation of the manufacturing process which is enable the successful production of product at three different manufacturing sites." ¶182.

- "[T]he drug product manufacturer ... is in place and ***processes have been established and appropriate validation testing completed to enable manufacture of launch quantities.***" ¶232.

- "[W]e hired key personnel to prepare for commercialization and commence manufacturing an initial order of Neutrolin for sale upon approval." ¶243.

- "***Completing this filing was a major undertaking as the team had to work through the Chemistry Manufacturing and Control information, CMC,*** and a large volume of data generated due to the size of LOCK-IT-100 trial and the underlying health issues of the hemodialysis patient group." ¶263.

- The CRL disclosed on March 1, 2021 was of minimal importance and could be quickly and easily resolved. ¶¶285-90.

- CorMedix had, ***in April 2021***, following receipt of the CRL "[s]uccessfully concluded technical transfer and validation of the drug product manufacturing process, which has enabled production at 2 different manufacturing locations[,]" and that "[l]aunch quantities are already in production[.]" ¶306.

14

These statements are actionable because Plaintiff "ha[s] alleged sufficient facts that if accepted as true, establish knowledge on the part of the Defendants that [the] statements ... were false or misleading or omitted a material fact." *Gargiulo v. Isolagen, Inc.*, 527 F. Supp. 2d 384, 389 (E.D. Pa. 2007). When Defendants chose to speak about the present state of the Company's manufacturing capabilities in relation to the DefenCath NDA, they were bound to include material facts that would make their statements misleading by their omission. *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010).

### b.  **Misrepresentations and omissions about being "on track."**

The Complaint cogently pleads that Defendants repeatedly assured investors that DefenCath was on track to be approved, while at the same time withholding serious known risks about the sufficiency of the NDA and manufacturing capabilities of the Company's CMO. ¶¶108-148, 182-226. During the Class Period, Defendants told the market, *inter alia*, that:

- "CorMedix remains on schedule for a potential NDA approval during the second half of 2020." ¶234.

- "We have remained on schedule towards an anticipated approval in the second half of 2020, subject of course to possible delays at FDA due to the coronavirus pandemic." ¶187.

- "[W]e are maintaining our guidance for an anticipated decision on

15

approval of the NDA in the second half of 2020." ¶187.

- The FDA "noted that *it is planning to hold an advisory committee meeting to discuss the [NDA] application* and that *it had not identified any potential review issues* at this time." ¶¶138, 143, 266, 271.

- "[W]e look forward to *continuing to work together [with the FDA] expeditiously to complete the review of the Defencath NDA* to address an unmet medical need." ¶¶139, 267.

- The Company "has not been informed of any delays by the FDA in the review of the NDA, but ... *pre-approval inspections are required for manufacturing sites*." ¶¶143, 192, 271.

Defendants' decision to speak extensively and continually about the claimed timeline for FDA approval created a corresponding duty to reveal the manufacturing issues that made non-approval more likely. *See, e.g.*, *In re Digital Island Sec. Litig.*, 357 F.3d 322, 329 n.10 (3d Cir. 2004) (A duty to affirmatively disclose "'may arise when there is ... an inaccurate, incomplete or misleading prior disclosure'"). More directly, Defendants' "on track" statements are actionable because they falsified the then-current status of the DefenCath NDA. *In re Cigna Corp. Sec. Litig.*, No. Civ.A. 02-8088, 2005 WL 3536212, at *11 (E.D. Pa. Dec. 23, 2005) (finding statement that "we are on track with our own schedule" actionable where company was not "on track").

16

Third Circuit courts have repeatedly affirmed that the selective disclosure of data is actionable under the federal securities laws. *See Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 331 (E.D. Pa. 2020) (omissions actionable where defendant knew that an NDA would be deficient because he knew that Trevena's studies did not conform the primary or secondary endpoints to the FDA's requirements); *see also In re Celgene Corp. Sec. Litig.*, No. CV 18-4772, 2019 WL 6909463, at *18 (D.N.J. Dec. 19, 2019) ("[t]he fact that Defendants told investors about the positive clinical study results but failed to disclose the Metabolite discovery was misleading"); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 898 (E.D. Pa. 2018) (falsity alleged where defendants failed to disclose unfavorable data that would inform the FDA's decision); *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 348-49 (E.D. Pa. 2014) (defendants "systemically misled investors about the key components of the [ ] NDA and the nature of FDA feedback while presenting predictions about FDA approval of Ampligen that it should have known were unreasonable under the circumstances").

### c. **Misrepresentations and omissions regarding likelihood of approval.**

Defendants repeatedly and falsely informed investors that the FDA was inclined to approve DefenCath, despite deficiencies existing at the manufacturing facility that made FDA approval a longshot at best. Nevertheless, Defendants pretended that these issues simply did not exist, and stated, *inter alia*, that:

17

- "***The FDA was supportive of Neutrolin's proposed manufacturing program***...." ¶¶227, 230.

- "As our press release of 16 October indicated ***the outcome of our interaction with the FDA was very positive. FDA was supportive of the core manufacturing processes for the drug product*** and the active pharmaceutical ingredients for the inclusion as part of the NDA submission." ¶231.

The law is clear that Defendants' blatant misrepresentations – in direct contrast to what they contemporaneously knew – about the FDA's posture toward the DefenCath NDA are actionable. *See SEB*, 351 F. Supp. 3d at 898 (Complaint sustained where defendants, while "instilling hope in their investors …. failed to disclose the unfavorable data that would inform the FDA's decision); *Frater*, 996 F. Supp. 2d at 348–49 (E.D. Pa. 2014) (plaintiffs adequately pled that "Hemispherx systemically misled investors about the key components of the Ampligen NDA and the nature of FDA feedback while presenting predictions about FDA approval of Ampligen that it should have known were unreasonable under the circumstances."); *Skiadas v. Acer Therapeutics Inc.*, No. 1:19-CV-6137-GHW, 2020 WL 4208442, at *8 (S.D.N.Y. July 21, 2020) (Claim stated where "Defendants knew that the FDA had not *agreed* to approve EDSIVO but that they chose to say the opposite.").

### d. **Misrepresentations regarding delays and risks.**

The Complaint adequately alleges that the deficiencies Defendants hid from

18

the market were far more likely to delay approval of the DefenCath NDA than the risks they "cautioned" investors about, *i.e.*, the delays at the FDA due to the coronavirus pandemic or other disruptions. Specifically, Defendants failed to disclose that the DefenCath NDA did not provide sufficient CMC data necessary to achieve regulatory approval as the Company had represented, and that it was at risk of receiving a CRL from the FDA, delaying the approval process. In place of the real, undisclosed risks that jeopardized the DefenCath NDA, Defendants further misled investors by claiming, *inter alia*, that:

- "[B]ecause the FDA has announced that it is postponing most foreign inspections through April and inspections outside of the US deemed mission-critical will still be considered on a case-by-case basis, we cannot predict if this will delay approval of the NDA." ¶114, 236.

- Approval was "subject … to possible delays at FDA due to the coronavirus pandemic." ¶¶ 121, 187, 245.

- "As a result of the COVID-19 outbreak, or similar pandemics, and related 'shelter in place' orders and other public health guidance measures, we have and may in the future experience disruptions" (¶¶124, 134, 144, 248, 260, 272) including "interruption of, or delays in receiving, supplies of our product candidates from our contract manufacturing organizations due to staffing shortages, production slowdowns or stoppages and disruptions in

19

delivery systems[.]" *Id*.

- "If we or any of the third parties with whom we engage were to experience shutdowns or other business disruptions, our ability to conduct our business in the manner and on the timelines presently planned could be materially and negatively impacted." ¶¶125, 135, 145, 249, 261, 273.

- "Data provided by collaborators and others upon which we rely that has not been independently verified *could* turn out to be false, misleading, or *incomplete*." Specifically, the 2019 10-K stated that "[w]e rely on third-party vendors, scientists, and collaborators to provide us with significant data and other information related to our projects, clinical trials, and business. *If such third parties provide* inaccurate, misleading, or *incomplete data*, our business, prospects, and results of operations could be materially adversely affected." ¶¶117, 239.

- "*The extent to which the [COVID-19] outbreak impacts our business*, preclinical studies and clinical trials *will depend on future developments*, which are highly uncertain and cannot be predicted with confidence, such as the ultimate geographic spread of the disease, the duration of the pandemic, travel restrictions and social distancing in the United States and other countries, business closures or business disruptions and the effectiveness of actions taken in the United States and other countries to

20

contain and treat the disease. ***If we or any of the third parties with whom we engage were to experience shutdowns or other business disruptions, our ability to conduct our business in the manner and on the timelines presently planned could be materially and negatively impacted.***" ¶¶125, 135, 145, 249, 261, 273.

Defendants' "risk disclosures" were not only ineffective, but themselves false and misleading because they affirmatively mischaracterized any "risks" to the DefenCath NDA as potential when real risks had already come to pass. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996) ("to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit").

Defendants further blurred the truth by prospectively warning of risks which had already come to pass. For example, Defendants claimed that "our contract manufacturers ***may not be able to comply with the applicable FDA regulatory requirements***, which could result in delays to our product development programs, could result in adverse regulatory actions against them or us, and could prevent us from ultimately receiving product marketing approval." ¶¶118, 240. Defendants also spoke of adverse outcomes "***[i]f we and our contract manufacturers fail to achieve and maintain high manufacturing standards in compliance with cGMP[.]***" *Id.*

Deceitful "warnings" such as these have been held to create a duty to disclose

21

and are not insulated, forward-looking statements. *See In re: Enzymotec Sec. Litig.*, No. CV-14-5556 (JLL)(MAH), 2015 WL 8784065, at \*15 (D.N.J. Dec. 15, 2015) ("Lead Plaintiffs specifically allege that these risks had already come to pass and that it was therefore unreasonable to make generalized warnings when Defendants knew, or should have known, of the specific regulations and their likely effect."); *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 471 (E.D. Pa. 2014) (citing cases).

### e. **Defendants' misrepresentations and omissions do not qualify as opinions or forward-looking statements.**

Defendants' argument that their false and misleading statements should be excused as expectational or "forward-looking" should be rejected. *See* CDM 26-27, UDM 25. The Complaint does not allege that Defendants failed to correctly predict that the FDA would not approve DefenCath, but rather that Defendants concealed adverse effects and risks that *had already occurred or were in the process of occurring*.[3] It is well-established that the "safe harbor or bespeaks caution [doctrine]

---

[3] *See, e.g.*, UDM at 8 (falsely claiming that whether "Defendants knew or should have known before the Offering Date that the FDA likely would not approve the DefenCath NDA" is the § 11 Claim's "essential premise."); CDM at 27 (wrongly claiming that "Plaintiff challenges CorMedix's optimism concerning [ ] FDA approval ...."). Courts have rejected identical attempts to mischaracterize complaint allegations. *Frater*, 996 F. Supp. 2d at 348-49 (Defendants' claim that claim turned on likelihood of approval "irrelevant to whether Hemispherx systemically misled investors about the key components of [ ] NDA and the nature of FDA feedback ...."); *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 324-25

22

provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon is one foot away." *In re Bristol-Myers Squibb Sec. Litig.*, No. No. Civ.A. 00–1990(SRC), 2005 WL 2007004, at *52 (D.N.J. Aug. 17, 2005).

Defendants' vague "cautionary language" did not describe manufacturing issues that were already known, and provide no cover for their misrepresentations. For example, in *In re Amarin Corp. PLC Sec. Litig.,* 689 F. App'x 124, 131-32 (3d Cir. 2017), relied on by Defendants (CDM at 25) despite its being not precedential, cautionary language applied only where the statements themselves were alleged to be false based on subsequent developments, rather than existing facts, as here.[4]

Nor does including the word "expects" transform statements made about information known to Defendants no later than the start of the Class Period into "forward-looking." *Compare* CDM at 25 with *Frater*, 996 F. Supp. 2d at 348 (where alleged misrepresentations included defendants' past scientific findings, "it cannot be that the mere inclusion of 'words of futurity or belief' brings otherwise non-forward-looking statements within the PSLRA safe harbor"); *Bristol-Myers*, 2005

---

(S.D.N.Y. 2018) ("At issue here are not Defendants' opinions about the NDA's prospects before the FDA, but [their] allegedly false descriptions of the contents of the NDA itself.").

[4] That Defendants contest materiality base on the supposed forward-looking nature of their statements is without force (CDM at 27) because, as discussed above, Defendants' statements were rooted in present fact.

23

WL 2007004, at *24 (holding that statements, *inter alia*, that trial results "are very impressive results" are not puffery because they "refer[] specifically to the results from the Vanlev trials—a matter of historical fact").[5]

### 2. The Complaint adequately alleges Defendants' scienter.

To plead scienter, the PSLRA requires a plaintiff to allege facts which give rise to a strong inference that the defendant acted with the required state of mind in making misleading statements and/or omissions. 15 U.S.C. § 78u-4(b)(2). These requirements can be met by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Avaya*, 564 F.3d at 276. In analyzing scienter, a court must determine "[w]hen the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs*, 551 U.S. at 326.

The inference of scienter, however, "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre." *Id.* at 324. The analysis must be "case specific" and should "ultimately rest not on the presence or absence of certain types of allegations but on

---

[5] In *Bauer v. Eagle Pharm., Inc.*, No. CV 16-3091(JLL), 2017 WL 2213147 (D.N.J. May 19, 2017), cited by Defendants (CDM at 24-25), the statements held to be puffery were found not to "relat[e] to FDA approval" and thus do not articulate a rule relevant to statements concerning approval here, while the alleged false statements in *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510 (S.D.N.Y. 2015) were held to be future-oriented in nature, unlike those cited in the Complaint, which are based in matters of present fact.

a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter."[6] *Avaya*, 564 F.3d at 269. The Complaint is clear that Defendants either knew of or recklessly disregarded the truth when making their false and misleading statements to investors during the Class Period.

### a. That Defendants held themselves out to investors as having knowledge of the facts they misrepresented supports scienter.

Scienter is supported by Defendants' claims about having knowledge of and being authoritative sources to discuss DefenCath's potential FDA approval. ¶¶231-32, 242. Courts in the Third Circuit have consistently found scienter where defendants profess knowledge and/or speak as an authoritative source on the issues at the heart of the misstatements. *See, e.g.*, *SEB*, 351 F. Supp. 3d at 906 (scienter existed where "officers were speaking as authoritative sources who possessed the information to support their statements"); *PTC*, 2017 WL 3705801, at *17 (defendants' "statements to investors during earnings calls and healthcare conferences implied that they had first-hand knowledge" of important studies related to the drug's FDA approval and conversations with the FDA, and thus "bolster[s]

---

[6] For example, Plaintiff is not obliged to plead stock sales as a basis for scienter, as the CorMedix Defendants incorrectly suggest. *See* CDM at 15; *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. CV157658MASLHG, 2017 WL 1658822, at *11 (D.N.J. Apr. 28, 2017).

the inference that [defendants] knew at the time that [their] statements were false or was reckless in disregarding the obvious risk of misleading the public"); *Hall v. Johnson & Johnson*, No. CV 18-1833 (FLW), 2019 WL 7207491, at *22 (D.N.J. Dec. 27, 2019) (CEO who "repeatedly professed to have knowledge regarding" issues at the heart of the misstatements acted with scienter).

Here, Defendants not only spoke with authority about the DefenCath NDA, they provided responses to specific questions and topics about DefenCath and its potential FDA approval that gave investors the impression of knowledge. *E.g.*, ¶¶199, 205, 206, 208, 209, 212, 231-32, 242, 287, 289.; *see Roofer's Pension Fund v. Papa*, No. CV 16-2805, 2018 WL 3601229, at *22 (D.N.J. July 27, 2018).[7] This is especially true with respect to Defendants' characterizations of FDA feedback, which implied that Defendants were authoritative speakers on DefenCath's FDA approval process. ¶¶111-12, 118, 124; *Frater*, 996 F. Supp. 2d at 349-50 (finding scienter where defendants conveyed FDA feedback to investors, thereby implying that they were knowledgeable sources who knew the entirety of FDA feedback).

Defendants' failure to meaningfully address this glaring indicator of scienter concedes it. *See Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503

---

[7] Moreover, Defendants' certitude when being directly questioned by analysts about potential FDA approval bolsters the already strong inference of scienter. *Utesch v. Lannett Co., Inc.*, 385 F. Supp. 3d 408, 422 (E.D. Pa. 2019) (finding scienter where "a high-ranking officer evinces certitude as to a matter, particularly where the underlying substance is being publicly questioned").

F.3d 256, 259 (3d Cir. 2007); *Eagle Sys., Inc. v. Asaro-Angelo*, No. CV 18-11445 (MAS) (DEA), 2019 WL 3459088, at *4 n.1 (D.N.J. July 31, 2019). Defendants' profession of knowledge, taken together with the fact that the misstatements and omissions directly concerned the Company's core operations, demonstrates a strong inference of scienter. *See, e.g., Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 232-33 (E.D. Pa. 2021) (finding scienter established where defendants held themselves out as knowledgeable and the misstatements concerned the company's core operations).[8]

### b. Defendants' access to facts contradicting their public statements supports scienter.

Defendants incorrectly assert that scienter cannot be established by the high-level nature of the Officer and Director Defendants' positions within CorMedix. CDM at 16. Courts in this district have previously rejected such arguments, holding that allegations that a defendant's executive position provided "access to information contradicting [that defendant's] public statements," taken together with other allegations of scienter, suffice to create a strong inference of scienter. *T. Rowe Price*

---

[8] That Defendants' misrepresentations were directly related to the Company's core operations undermines the CorMedix Defendants' claim that Plaintiff has failed allege motive, which although not necessary, can be relevant to the holistic review of scienter. *Avaya*, 564 F.3d at 276-277; *Tellabs*, 551 U.S. at 325 (holding that "the absence of a motive allegation is not fatal"). Plaintiff alleges that Defendants had significant financial motives to hide material risks regarding the DefenCath NDA Indeed, the Company's survival virtually depended on it. ¶79.

*Growth Stock Fund, Inc. v. Valeant Pharms. Int'l, Inc.*, No. CV 16-5034 (MAS) (LHG), 2018 WL 395730, at *6-*7 (D.N.J. Jan. 12, 2018).

Here, the Officer and Director Defendants' positions provided them with access to knowledge that contradicted their public statements about DefenCath's FDA approval and manufacturing. *E.g.*, ¶¶180, 356, 359, 365, 366. This, viewed in concert with the other allegations of scienter, including the fact that the misrepresentations and omissions concerned CorMedix's core operations, cause an inference of scienter to arise. *See SEB*, 351 F. Supp. 3d at 905-06 (holding that "an inference of scienter may arise" by virtue of a defendant's position and when the misrepresentations and omissions involved core matters of central importance to the company and its executives); *PTC*, 2017 WL 3705801, at *17 (same); *In re Genta, Inc., Sec. Litig.*, No. CIV.A. 04-2123 (JAG), 2005 WL 2416970, at *6-*7 (D.N.J. Sept. 30, 2005) (same) (collecting cases).[9]

Further, a defendant's executive position can create a strong inference of scienter when the core operations theory applies, which, as discussed below, it does

---

[9] Relatedly, the CorMedix Defendants' throwaway bid to contest scheme liability, CDM at 36, fails where Plaintiff alleges that the CorMedix Defendants concealed known deficiencies that had the effect of artificially inflating the price of CorMedix stock during the Class Period and, in so doing, perpetrated a fraud upon the public. ¶¶182-226. Such allegations adequately state a claim for "scheme liability." *See In re ForceField Energy Inc. Sec. Litig.*, No. 15 CIV. 3020 (NRB), 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) (allegations of stock price inflation via undisclosed purchases held sufficient to plead scheme liability).

28

in this instance. *See Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, No. 2:20-cv-2155-SRC-CLW, 2021 WL 4191467, at *19 (D.N.J. Sept. 15, 2021). Likewise, in *In re Honeywell Int'l, Inc. Sec. Litig.*, the court found that, where a defendant was both the Chief Executive Officer and Chairman of the subject company, he had full knowledge of all operations and "[b]y virtue of his position he had to have known of the falsity of the representations he and his fellow officers made," thereby establishing scienter. 182 F. Supp. 2d 414, 428 (D.N.J. 2002). Similarly, the Officer and Director Defendants, in their respective high-level capacities, had full knowledge of CorMedix's operations and thereby knew the falsity of the representations they made to investors.

### c. Core operations theory supports scienter.

"Under the core operations doctrine, material misrepresentations concerning core matters of central importance to a company may support an inference of scienter when accompanied by some additional allegation of specific information conveyed to management and related to the fraud." *Carmignac Gestion, S.A. v. Perrigo Co. PLC*, No. CV 17-10467, 2019 WL 3451523, at *16 (D.N.J. July 31, 2019) (citing *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018)). "Allegations that fraud related to a high-earning segment of a company have been found sufficient to support a core operations inference." *Id.*

As the Complaint notes, the adverse developments at issue here impacted the most central aspect, or the core, of CorMedix's business, operations and revenue. ¶¶48, 79. This more than suffices to establish scienter under the core operations doctrine. *See*, *e.g.*, *Hall*, 2019 WL 7207491, at \*21 (collecting cases and finding scienter where defendant considered the product at the heart of the misstatements a "flagship product"); *Carmignac*, 2019 WL 3451523 at \*16 (finding scienter where the relevant section comprised 22% of defendant's business); *Enzymotec*, 2015 WL 8784065, at \*17-\*18 (finding scienter where the misstatements concerned defendants' core business "about which Defendants regularly spoke").

By contrast, in *Industriens*, cited by the CorMedix Defendants, the court found the core operations doctrine did not apply where the product at issue was only a part of a division that drove 50% of defendants' business and there were no "other, individualized allegations that further suggest that the officer had knowledge of the fact in question." 2021 WL 4191467, at \*19. The Complaint contains such allegations. ¶¶231-32, 287. Moreover, unlike in *Industriens*, DefenCath was not simply part of the division that drove a portion of CorMedix's business; it **was** the business. ¶79. Finally, *Industriens* identifies a host of cases where the core operations theory applied when the misstatements at issue "concern[ed] matters exceptionally impactful on the businesses at issue" and where the stock declined significantly upon disclosure. *Industriens*, 2021 WL 4191467 at \*19 n.33. On just

30

the September 7, 2021 disclosure alone, CorMedix's stock price fell over 27%. ¶213. The core operations theory applies to this action according to the terms of Defendants' primary cited case on the subject.

### d. Defendant Armstrong's experience bolsters scienter.

Experience can be used to demonstrate that a defendant knowingly misused terms or concepts to mislead the market. *See McDermid v. Inovio Pharms., Inc.*, 520 F. Supp. 3d 652, 654 (E.D. Pa. 2021) (holding that the defendant's "background and experience in the pharmaceutical industry" strongly suggested that he understood how his statements could be misconstrued and/or misleading, thereby bolstering scienter). Here, the Company itself touted Armstrong's more than 45 years of experience in the pharmaceutical industry with broad senior level cross functional experience, which, along with that of other CorMedix executives, would have alerted them to how their downplaying/omissions of such risks would create a misleading impression amongst investors. Moreover, Armstrong consistently discussed the FDA approval process with great specificity, demonstrating his in-depth, experiential knowledge of that process. ¶¶10, 12, 13, 105, 184, 186, 203, 231-32, 287, 289.

### e. Defendants' SOX certifications bolster scienter.

The already strong inference of scienter is further supported by Baluch and David SOX certifications, which claim that both assessed Cormedix's disclosures

and disclosure controls. ¶¶241, 250, 262, 274, 295, 319. Courts in the Third Circuit have held that this type of allegation can ***contribute*** to a court's finding of scienter, and it does so here. *See In re Toronto-Dominion Bank Sec. Litig.*, No. CV 17-1665 (NLH/JS), 2018 WL 6381882, at *19 (D.N.J. Dec. 6, 2018).

### f.  **No plausible competing inference.**

Defendants do not attempt to raise a competing inference that would explain why they hid adverse data and regulatory communications from investors. Instead, they limit their purported "competing inference" to the strawman assertion that Defendants were not certain about the FDA's rejection. That, however, is not what the Complaint alleges, and it offers no competing inference applicable to the Complaint's unquestionable well-pled allegations that the CorMedix Defendants knew of serious risks to FDA approval but hid those risks from investors, who were damaged when the risks ultimately materialized.

When the Complaint is considered as written, *Tomaszewski*, cited *supra*, is remarkably on point. There, as here, the defendant company (1) "was struggling to survive," (2) had "only one viable drug candidate," (3) fast-tracked its drug's FDA approval, meaning that "changing course in reaction to FDA's feedback would have cost time and money," and (4) had executives who knew of potential issues, but nevertheless made statements expressing confidence of FDA approval. *Tomaszewski*, 482 F. Supp. 3d at 330. The *Tomaszewski* court found "a cogent and

32

compelling inference that, in response to a time and money crunch, [defendants] took—and lost—a calculated gamble to initiate the preparatory work for the Phase 3 studies without FDA approval, and that when the FDA expressed disagreement, [defendant] deceived investors in the hope that the FDA would end up agreeing with the data from the Phase 3 studies and approve [the subject drug]." *Id*. at 333. The court further noted that while, there is nothing unlawful in taking a calculated gamble, "if, as Plaintiffs allege here, Defendants misled [investors] about such risks by making assurances regarding the completeness of the data and likelihood of FDA approval, Defendants may be held liable." *Id*. at 335 n.100.

Similarly, the court in *Frater*, 996 F. Supp. 2d at 349, found a strong inference of scienter where "statements characterizing the feedback Hemispherx received from the FDA at the June 8 meeting imply that speakers knew the entirety of the FDA's feedback, including its concurrent warning that it would be unusual for a resubmitted NDA to succeed based on reanalysis of previously submitted data." And the court in *In re Viropharma, Inc. Sec. Litig.*, No. CIV.A. 02-1627, 2003 WL 1824914, at *9 (E.D. Pa. Apr. 7, 2003) found scienter adequately pled where defendants were aware of issues with Phase II trials but misrepresented them to investors. Here, in the same vein as *Tomaszewski*, *Frater* and *Viropharma*, in response to a time and money crunch, Defendants took a gamble that the well-known risks posed by their CMO would not prevent FDA approval and hid those risks from

33

investors, only coming clean when no other option remained. ¶¶201, 207.

### 3.  The Complaint adequately alleges loss causation.

A "[p]laintiff may adequately plead loss causation by alleging either a corrective disclosure of a previously undisclosed truth that causes a decline in the stock price or the materialization of a concealed risk that causes a stock price decline." *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 450 (D. Del. 2014).

The Third Circuit has accepted the materialization of the risk as a viable theory of loss causation. *See McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir. 2007) (holding loss causation can be proven where "defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss," and that materialization of the risk "is consistent with our loss causation jurisprudence.").[10]

The Supreme Court has made clear that alleging loss causation "should not prove burdensome" as a complaint need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005). The Third Circuit has

---

[10] District courts within this Circuit have also accepted the materialization of the risk theory. *See*, *e.g.*, *Wilmington Trust*, 29 F. Supp. 3d at 450; *In re Urban Outfitters, Inc., Sec. Litig.*, 103 F. Supp. 3d 635, 657 (E.D. Pa. 2015) ("Plaintiff has adequately alleged a materialization of the concealed risk as well as a corrective disclosure...."); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 17-929, 2021 U.S. Dist. LEXIS 1851, at *27 (D.N.J. Jan. 5, 2021) ("Plaintiffs have adequately pled loss causation through a materialization of the risk approach ….").

34

further held that loss causation inquiries are generally inappropriate on a motion to dismiss. *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000).

Here, the Complaint alleges that each corrective disclosure and risk materialization provided the market information that had previously been concealed about the DefenCath NDA and were promptly followed by declines in the price of CorMedix stock. Thus, the Complaint fully provides Defendants the causal information prescribed by *Dura*. *See, e.g.,* ¶¶17-18, 20-32, 34, 335-38.

The CorMedix Defendants first mistakenly argue that Plaintiff is limited to pleading *corrective disclosures* only, CDM at 36, when the alleged price drops were materializations of the risks concealed from the beginning of the Class Period. Next, Defendants point to a price increase on March 9, 2021, CDM at 37, as being inconsistent with Plaintiff's theory of loss causation. This ignores Plaintiff's express allegations that even after the CRL was disclosed, Defendants continued to mislead investors and downplay the gravity of the CRL, ¶¶24, 33, 202, which explains the non-linear nature of market reaction. Finally, Defendants offer no authority for the proposition that their self-serving explanation for the September 7, 2021 disclosure should be accepted by the Court. CDM at 37-38. That the delays emanated from the same defective facility at the heart of the FDA's rejection of DefenCath is enough.

## II. Plaintiff Adequately Alleges §11 Violations.

### A. The Securities Act Places a Minimal Pleading Burden on Plaintiff.

Section 11 of the Securities Act creates a private remedy for any purchaser of a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading ...." 15 U.S.C. § 77k(a). "The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983); *Suprema*, 438 F.3d at 269. "If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." *Herman*, 459 U.S. at 382; 15 U.S.C. § 77 k(b).

### B.    Plaintiff's Securities Act Claims Do Not Sound in Fraud.

Without analysis, the CorMedix Defendants assert, in conclusory fashion, that Plaintiff's § 11 claim "sounds in fraud" and is therefore subject to heightened pleading requirements under Rule 9(b) and the PSLRA. CDM 38, n.22. Not so.

The Third Circuit has explained that fraud "is not a necessary element to establish a prima facie claim under Section 11 or Section 12(a)(2)." *Suprema*, 438 F.3d at 270. "Where a plaintiff's Section 11 or Section 12(a)(2) claims are not grounded in allegations of fraud, the liberal notice pleading requirements of Rule 8 apply." *Id.* "Whether a Securities Act claim is subject to Rule 9(b) requires an

36

assessment of the particular claim to determine whether acts of fraud on the part of the defendants form the basis for the claim against them." *Id.*

First, the Securities Act claim does not sound in fraud because it is brought on behalf of an entirely distinct class and expressly sounds in negligence, unlike the Exchange Act clams. ¶1. Moreover, Plaintiff alleges the Securities Act claim in the first part of the Complaint and the Exchange Act claims in the latter part, and did not incorporate the fraud allegations for the Exchange Act claims into the § 11 claim. Such a clear delineation between claims supports a determination that the § 11 claim does not sound in fraud. *Suprema*, 438 F.3d at 273; *see also Bauer v. Prudential Fin., Inc.*, No. CIV.A. 09-1120 (JLL), 2010 WL 2710443, at *4 (D.N.J. June 29, 2010) ("The allegations in Plaintiff's Amended Complaint are more akin to the expressly negligence-based allegations made in [*Suprema*].").

Second, the allegations in the § 11 claim are couched in the language of negligence, not fraud. ¶¶76-77. By contrast, Plaintiff's Exchange Act claims expressly alleges a fraudulent scheme. ¶¶182-226. Where, as here, "defendants are accused in separate claims of the same complaint of having violated Section 11 ... and Section 10(b), the Securities Act claims do not sound in fraud if ordinary negligence is expressly pled in connection with those claims." *Suprema*, 438 F.3d at 272; *see also Gaer v. Educ. Mgmt. Corp.*, No. CIV.A. 10-1061, 2011 WL 7277447, at *20 (W.D. Pa. Aug. 30, 2011), report and recommendation adopted, No. CIV.A.

10-1061, 2011 WL 7277578 (W.D. Pa. Sept. 29, 2011) ("As Plaintiffs have expressly pleaded ordinary negligence with respect to the Securities Act claims ... Rule 8 applies to these claims.").

Third, plaintiff has disclaimed all allegations of fraud from his § 11 claim. ¶76. Such disclaimers are significant, as here, when paired with factual allegations supporting the disclaimer. *Suprema*, 438 F.3d at 270-72; *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. CV 15-7658 (MAS) (LHG), 2017 WL 1658822, at *13 n.22 (D.N.J. Apr. 28 2017); *Bauer*, 2010 WL 2710443 at *4; *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 05-232, 2007 WL 81937, at *6-*7 (E.D. Pa. Jan. 9, 2007). Thus, Plaintiff's Securities Act claims are not subject to heightened pleading standards.

## C.    Plaintiff Adequately Alleges Falsity in the Offering.

The Offering Documents were negligently prepared and, as a result, contained materially false and misleading statements of fact and failed to disclose facts required to be disclosed therein regarding CorMedix's business, operations, and prospects. The Offering Documents failed to disclose that CorMedix knew or should have known before the effective date of the Offering Documents that its DefenCath NDA did not provide sufficient CMC data necessary to achieve regulatory approval as the Company had represented, and that it was at risk of receiving a CRL from the FDA, delaying the approval process. Furthermore, the Offering Documents incorporated by reference various SEC filings that were themselves false and

38

misleading. ¶¶78, 111.

Defendants' failure to disclose known flaws at the heart of the DefenCath NDA were not only improper in light of the Offering Documents' misleading statements concealing those flaws, but also in light of the required disclosures in SEC filings, particularly Items 303 and 105 of SEC Regulation S-K. Failing to disclose information required by those items comprise § 11 violations. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012); *In re Rediff.com India Ltd. Sec. Litig.*, 358 F. Supp. 2d 189, 211 (S.D.N.Y. 2004).

"Item 303 … requires the disclosure of, among other things ... 'any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 824 F. Supp. 2d 1214, 1249 (D.N.M. 2011) (quoting 17 C.F.R. § 229.303(a)). "Item 105 … 17 C.F.R. § 229.105, requires that an issuer [of an SEC filing] '***disclose the most significant factors that make an investment in the registrant or offering speculative or risky.***'" *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302 (S.D.N.Y. 2021) (quoting *In re Proshares Trust II Sec. Litig.*, No. 19 Civ. 886, 2020 WL 71007, at *9 (S.D.N.Y. Jan. 3, 2020)).

Defendants had a duty to disclose, under Item 303, the fact that the FDA had already communicated insufficiency in the CMC program presented by CorMedix

39

for the DefenCath NDA. ¶105. That the FDA likely would not approve the NDA based on the data and application submitted was a known uncertainty that was then having, and would continue to have, an unfavorable impact on the Company's revenues and income from continuing operations, and was therefore required to be disclosed in the Offering Documents, but was not. *Id.*[11] Likewise, Defendants violated Item 105 because the Offering Documents failed to disclose the increased risks posed by the FDA's serious concerns regarding the CMC program data. ¶105.[12]

## CONCLUSION

Based on the foregoing, Defendants' motions to dismiss should be denied in their entirety. Should this Court find any infirmity in the Complaint, Plaintiff respectfully requests leave to amend.[13]

---

[11] As discussed above, Defendants' "warnings" were misleading and illusory, and cannot rescue their violation of Item 303. *See* CDM at 40. Nor can Defendants' eight years of interactions with the FDA regarding DefenCath (*see* ¶80) be plausibly compared to the sale of "a single product." *Id.* (citing *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516 (W.D. Pa. 2019)).

[12] Defendants' argument that the Complaint does not state a violation of Item 105 misreads the Complaint as alleging that Defendants should have disclosed that "the FDA likely would not approve the DefenCath NDA" (UDM at 14) when it actually alleges that Defendants were required to disclose the FDA's grave concerns regarding the data supporting the CMC program. ¶155.

[13] The CorMedix Defendants argue only that the Complaint's §§ 15 and 20(a) claims are inadequate for their alleged failure to plead a primary violation of §§ 11 and 10(b). *See* CDM at 40 n.25. Because Plaintiff has adequately pleaded underlying violations, the Complaint also adequately pleads §§ 15 and 20(a) violations with respect to the Officer and Director Defendants.

Dated: April 27, 2022          Respectfully Submitted,

**POMERANTZ LLP**
/s/ *Louis C. Ludwig*
Louis C. Ludwig (NJ 043582008)
Joshua B. Silverman (*pro hac vice* forthcoming)
10 South LaSalle St., Ste. 3505
Chicago, IL 60603
Telephone: (312) 377-1181
lcludwig@pomlaw.com
jpsilverman@pomlaw.com

**ROCHE FREEDMAN LLP**
Ivy T. Ngo (*pro hac vice*)
Velvel (Devin) Freedman (*pro hac vice*)
Constantine P. Economides (*pro hac vice*
forthcoming)
1 SE 3rd Ave., Suite 1250
Miami, Florida 33131
Telephone: (305) 971-5943
ingo@rochefreedman.com
vel@rochefreedman.com
ceconomides@rochefreedman.com

*Counsel for Lead Plaintiff and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2022, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

**POMERANTZ LLP**

By: /s/ _____ *Louis C. Ludwig* _____
Louis C. Ludwig
*Counsel for Lead Plaintiff*