DECHERT LLP
David A. Kotler
Paul C. Kingsbery
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
david.kotler@dechert.com
paul.kingsbery@dechert.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE CORMEDIX INC. SECURITIES LITIGATION | : : : : : : : | Civil Action No.: 2:21-cv-14020-JXN-CLW <br><br> <u>CLASS ACTION</u> <br><br> **Motion Day: June 6, 2022** |
| This Document Relates To: ALL ACTIONS | : : : : : : : : : | ORAL ARGUMENT REQUESTED |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF THE CORMEDIX DEFENDANTS' MOTION TO DISMISS THE <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION .......................................................................................1

ARGUMENT .............................................................................................2

I.     PLAINTIFF FAILS ADEQUATELY TO ALLEGE SCIENTER.................2

       A.     Motive Allegations Weigh Against an Inference of Scienter. .............2

       B.     No Particularized Facts Support a Strong Inference of Scienter. ........3

              1.     Positions and "Access to Facts" Are Insufficient. .....................4

              2.     The "Core Operations" Doctrine is Inapplicable.......................6

              3.     Allegations Concerning the Expertise of Certain
                     Individual Defendants Are Insufficient. ...................................7

       C.     There Are Substantial Competing Inferences Against Scienter. .......10

II.    PLAINTIFF FAILS ADEQUATELY TO ALLEGE A MATERIAL
       MISSTATEMENT OR OMISSION. .........................................................11

       A.     Plaintiff Fails to Identify Any Misrepresentation Regarding the
              "Status of Facilities Manufacturing DefenCath." .............................11

       B.     Plaintiff Fails to Allege Any Actionable Statements About the
              Timing or Likelihood of FDA Approval.............................................12

       C.     Plaintiff Fails to Show that the PSLRA Safe Harbor is
              Inapplicable to the Challenged Misstatements..................................13

III.   PLAINTIFF FAILS ADEQUATELY TO ALLEGE LOSS
       CAUSATION. .......................................................................................14

IV.    PLAINTIFF FAILS TO PLEAD SCHEME OR CONTROL-PERSON
       LIABILITY............................................................................................15

CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer L.P*,
532 F. Supp. 3d 189 (E.D. Pa. 2021)......................................................................9

*Cal. Public Employees' Ret. Sys. v. Chubb*,
394 F.3d 126 (3d Cir. 2005) ............................................................................9–10

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ............................................................................2, 11

*Cozzarelli v. Inspire Pharm. Inc.*,
549 F.3d 618 (4th Cir. 2008) ...........................................................................3, 10

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335 (E.D. Pa. 2014).................................................................10

*In re Adolor Corp. Sec. Litig.*,
616 F. Supp. 2d 551 (E.D. Pa. 2009)...................................................................3

*In re Bristol-Myers Squibb Sec. Litig.*,
2005 WL 2007004 (D.N.J. Aug. 17, 2005) ........................................................14

*In re Celegene Corp. Sec. Litig.*,
2019 WL 6909463 (D.N.J. Dec. 19, 2019)..........................................................10

*In re ForceField Energy Inc. Sec. Litig.*,
2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017)......................................................15

*In re Galena Biopharma, Inc. Secs. Litig.*,
2019 WL 5957859 (D.N.J. Nov. 12, 2019) ......................................................2, 11

*In re Genta, Inc. Sec. Litig.*,
2005 WL 2416970 (D.N.J. Sept. 30, 2005)...........................................................5

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002) ............................................................................11

*In re PDI Sec. Litig.*,
2006 WL 3350461 (D.N.J. Nov. 16, 2006) ...........................................................3

ii

*In re PTC Therapeutics, Inc. Sec. Litig.*,
   2017 WL 3705801 (D.N.J. Aug. 28, 2017) ......................................................5, 9

*Industriens Pensionsforsikring A/S v. Becton, Dickinson and Co.*,
   2021 WL 4191467 (D.N.J. Sept. 15, 2021) .........................................................2

*Institutional Inv. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) ...........................................................................3, 13

*Martin v. GNC Holdings, Inc.*,
   757 F. App'x 151 (3d Cir. 2018) ........................................................................6

*McCabe v. Ernst & Young, LLP*,
   494 F.3d 418 (3d Cir. 2007) .........................................................................14, 15

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) ...........................................................................3, 6

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
   351 F. Supp. 3d 874 (E.D. Pa. 2018).................................................................4, 9

*Sportscare of Am., P.C. v. Multiplan, Inc.*,
   2011 WL 589955 (D.N.J. Feb. 10, 2011) .........................................................3, 4

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*,
   2018 WL 395730 (D.N.J. Jan. 12, 2018)..............................................................4

*Tomaszewski v. Trevena, Inc.*,
   482 F. Supp. 3d 317 (E.D. Pa. 2020)..................................................................10

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017) .............................................................................13

**STATUTES**

15 U.S.C. § 77k, ...........................................................................................2, 11

15 U.S.C. § 78a ........................................................................................1, 2, 11, 15

15 U.S.C. § 78u-4...........................................................................................2, 13

iii

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)............................................................................................11

Fed. R. Civ. P. 9(b) ..........................................................................................11

17 C.F.R. § 240.10b-5.......................................................................................15

21 C.F.R. § 314.110(a)........................................................................................3

**INTRODUCTION**[1]

Plaintiff's Opposition ("Opp'n") reasserts his flawed fraud-by-hindsight theory: that CorMedix's receipt of the CRL indicates that the NDA contained inadequate information regarding manufacturing.[2] But the CAC fails to include particularized facts alleging a strong inference of scienter as required to state a § 10(b) claim, and Plaintiff ignores that the concerns FDA identified arose from information submitted *directly by the CMO* regarding its manufacturing facility— not information *CorMedix* submitted in the DefenCath™ NDA. Nor does Plaintiff identify *any* facts, through conflicting statements, confidential witnesses or otherwise, that alerted Defendants to a concern later identified in FDA's review of the manufacturing facility, or enabled Defendants to predict that FDA would issue a CRL. Mere references to "positions," core operations or experience are not enough.

---

[1] Capitalized terms are defined in the Memorandum in Support of the CorMedix Defendants' Motion to Dismiss ("Motion" or "Mot.") the Consolidated Amended Class Action Complaint ("CAC"), ECF No. 57-1. "Ex. __" refer to the exhibits attached to the Motion, ECF No. 57-2.

[2] In his Opposition (but not the CAC) Plaintiff claims the concerns expressed by FDA related to a "critical manufacturing defect" that was "catastrophic given the life-or-death importance of exactitude in drug administration." Opp'n at 1–2. This is not pled in the CAC and it is false. Catheter lock solutions are used to fill a catheter, the size of which can vary, and then removed. *See* FDA Label for HEP-LOCK U/P Preservative-Free (Heparin Lock Flush Solution, USP) at 7, https://www.accessdata.fda.gov/drugsatfda_docs/label/2005/017037s154,055,156l bl.pdf ("DOSAGE AND ADMINISTRATION . . . [the drug] is injected via the injection hub in a quantity sufficient to fill the entire device").

Plaintiff also fails to allege an actionable statement or omission as required to state a § 10(b) or § 11 claim. Instead, Plaintiff challenges forward-looking statements protected by the PSLRA's safe harbor and true statements of fact. Finally, Plaintiff fails to plead loss causation, and his scheme and control allegations are wholly insufficient. The CAC should be dismissed with prejudice.

## ARGUMENT

### I.    PLAINTIFF FAILS ADEQUATELY TO ALLEGE SCIENTER.

Plaintiff fails to allege particularized facts raising a strong inference that each Defendant acted with scienter, as required under § 10(b) of the Exchange Act. Mot. at 13–14; *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159 (3d Cir. 2014).[3]

#### A.    Motive Allegations Weigh Against an Inference of Scienter.

Fraud without motive makes little sense. Plaintiff does not dispute that a public stock offering is "not the type of financial benefit[] that support[s] a finding of scienter," or that Defendants' lack of stock sales negates an inference of scienter. Mot. at 15–16; Opp'n at 25 n.6. Nonetheless, Plaintiff claims that the lack of motive is "not fatal," Opp'n at 27 n.8, and asserts that scienter is adequately alleged because the "entire thrust of [CorMedix's] business was motivated by the development and

---

[3] To state a § 10(b) claim against CorMedix, Plaintiff must establish "that at least one individual officer" acted with scienter. *Industriens Pensionsforsikring A/S v. Becton, Dickinson and Co.*, 2021 WL 4191467, at *17 (D.N.J. Sept. 15, 2021) (quotations omitted); *In re Galena Biopharma, Inc. Secs. Litig.*, 2019 WL 5957859, at *11 (D.N.J. Nov. 12, 2019) (conclusory group pleading is insufficient).

2

commercialization of DefenCath in the U.S." *Id.*; CAC ¶ 79.

First, even if the failure to plead motive is not "fatal," the absence of motive "raises a compelling inference *against* scienter," Mot. at 15 (citing *In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 572–73 (E.D. Pa. 2009)), and requires that the strength of alleged "circumstantial evidence must be correspondingly greater." *Id.* at 16 (citing *In re PDI Sec. Litig.*, 2006 WL 3350461, at *8 (D.N.J. Nov. 16, 2006)). Second, the motive to "develop[] and commercializ[e]" a drug product is common for directors and officers of drug companies and in no way constitutes "a concrete and personal benefit." *Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 278 (3d Cir. 2009); *see also Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245–46 (3d Cir. 2013). Indeed, "[i]t is improbable that [a drug company] would stake its existence on a drug and a clinical trial that the company thought was doomed to failure." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008).[4]

## B.    No Particularized Facts Support a Strong Inference of Scienter.

Whether considered separately or together, Plaintiff's attempt to establish scienter through alleged "circumstantial evidence" fails. Opp'n at 24.[5]

---

[4] In his Opposition (but not the CAC), Plaintiff incorrectly describes the CRL as a "rejection" of the NDA. Opp'n at 2, 7, 9, 32, 35. However, a CRL indicates only that FDA cannot approve a complete application as submitted. 21 C.F.R. § 314.110(a).

[5] Plaintiff fails to address Defendants' argument that certain retirements do not raise any inference of scienter, *see* Mot. at 19, and thus waives it. *Sportscare of Am., P.C. v. Multiplan, Inc.*, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011).

3

## 1.    Positions and "Access to Facts" Are Insufficient.

Plaintiff's generalized claims about the Defendants' positions and access to information, Opp'n at 27–29, are insufficient to plead scienter.[6] Plaintiff's own cases show that he must identify *specific* information possessed by Defendants that contradicted their public statements or that should have been disclosed.

For example, in *T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.* ("*Valeant*"), which involved defendant's alleged reporting of inflated revenue, plaintiffs adequately pleaded scienter by referencing the corporate defendant's admissions that the revenues had been inflated, statements made by a director who investigated the misconduct, discipline imposed on a defendant for providing inaccurate information in connection with that investigation, and internal emails about improper revenue inflation. 2018 WL 395730, at *5–7 (D.N.J. Jan. 12, 2018); *see* Compl. ¶¶ 126, 315, 374, 411, *Valeant*, No. 3:16-cv-5034 (D.N.J. Aug. 15, 2016), ECF No. 1. No such facts are alleged in the CAC.

Plaintiff's other cases, Opp'n at 27–28, all alleged *specific* information defendants possessed that contradicted their public statements. *See SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 904–06 (E.D. Pa. 2018) (defendants

---

[6] Plaintiff contends that SOX certifications "contribute" to scienter because Defendants "assessed [CorMedix's] disclosures" and controls. Opp'n at 31–32. But Plaintiff fails to allege that any officer knew he was signing a false filing. Mot. at 19–20. *Multiplan*, 2011 WL 589955, at *1 (waiver by failure to address argument).

learned specific clinical data at internal meetings "that contradicted their public statements"); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at \*16 (D.N.J. Aug. 28, 2017) (FDA notified defendants that their proposed NDA was "facially insufficient" because it had "not achieve[d] statistical significance in the pre-specified analysis" and defendants appealed the decision); *In re Genta, Inc. Sec. Litig.*, 2005 WL 2416970, at \*1–2, 6–7 (D.N.J. Sept. 30, 2005) (defendant "personally involved in the design" of drug trials knew of negative results that contradicted public statements regarding drug safety, as revealed later by FDA).

In stark contrast, Plaintiff fails to identify any CorMedix employees, conflicting statements, or FDA announcements that supposedly notified Defendants that their statements were incomplete or misleading. CAC ¶¶ 180, 356, 359 (describing positions), *id.* ¶¶ 365–66 (conclusory assertions that Defendants possessed *unspecified* "adverse non-public information"). Worse still, Plaintiff does not even attempt to rebut Defendants' arguments that (i) the concerns FDA eventually identified arose from data submitted by its CMO—not CorMedix; and (ii) generalized references to a CMC meeting or "ongoing dialogue" with FDA, and requests for data to be included in the NDA, Opp'n at 7; CAC ¶¶ 80, 138, 143, 266, 271, 277, 281, cannot establish scienter without particularized facts concerning the contents of those meetings and discussions that tend to show that statements were knowingly false or omitted material information. Mot. at 16–17. Based on Plaintiff's

5

own theory of the case, *see* Opp'n at 1–2, 6, that would require allegations that Defendants were on notice of the "inconsistent fill volume" and other CMO issues *prior* to the issuance of the CRL.[7] Plaintiff cannot rely on the conclusory allegation that Defendants "contemporaneously knew" their statements were false or omitted material information. *See Id.* at 18. Plaintiff must offer more than allegations that CorMedix met with FDA. *See Rahman*, 736 F.3d at 245.

## 2.   The "Core Operations" Doctrine is Inapplicable.

As Plaintiff concedes, to invoke the core operations doctrine, the CAC must include "some additional allegation of ***specific information conveyed to management and related to the fraud***." *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018) (quotations omitted); Opp'n at 29–31.

Plaintiff's assertion that the CAC "contains such allegations," Opp'n at 30 (citing CAC ¶¶ 231–32, 287), is incorrect. Paragraph 231 merely alleges that CorMedix described a meeting with FDA as "very positive" and FDA as "supportive of the core manufacturing processes." CAC ¶ 231. Paragraph 232 contains a true

---

[7] In February 2022, CorMedix resubmitted its DefenCath NDA, which FDA deemed complete and accepted for filing. Mot. at 3. Plaintiff contends that FDA guidance required the Company to "know the inner workings" of its chosen CMO, Opp'n at 3, but does not allege any specific regulation that Defendants failed to follow, nor any facts demonstrating issues regarding the CMO were identified to CorMedix prior to the CRL. Plaintiff alleges that CorMedix told investors in November 2019 that FDA planned to "assess the commercial readiness of the various manufacturing facilities at the time of the NDA review," CAC ¶ 105, thus alerting investors that FDA may not identify certain manufacturing issues until after filing of the NDA.

statement about *different* manufacturers—not the CMO—regarding the sale of Neutrolin in Europe. Neither paragraph alleges facts regarding the substance of FDA meetings or identifies specific information that put CorMedix on notice that its statements were untrue or materially incomplete.[8]

Plaintiff also points to statements regarding the establishment of the "supply chain and distribution network . . . for launch in the U.S.," which included "validation testing completed to enable manufacture of launch quantities." *Id.* ¶ 232. He also relies on paragraph 287, wherein Armstrong states that CorMedix "work[ed] closely with the CMO via site visits and regular conference calls to prepare for an FDA inspection after submission of the NDA" and that "the drug product . . . continues to meet specifications." *Id.* ¶ 287. For each, Plaintiff fails to allege any specific facts conveyed to management during such visits or testing that contradicted their public statements, or alerted Defendants that FDA was concerned about fill volume or any other CMO-related issues.[9] Without alleging such facts, Plaintiff cannot invoke the core operations doctrine.

### 3.    Allegations Concerning the Expertise of Certain Individual Defendants Are Insufficient.

Plaintiff also attempts to allege scienter by arguing the Individual Defendants

---

[8] The DefenCath CMO does not manufacture Neutrolin in Europe. Ex. 3 at 5.

[9] Plaintiff does not adequately allege those statements are misleading. §§ II.A–II.B.

7

held themselves out as "authoritative sources to discuss DefenCath's potential FDA approval" and responded to questions "about DefenCath and its potential FDA approval that gave investors the impression of knowledge." Opp'n at 25–26, 31.

This argument is absurd. Plaintiff merely points to accurate statements concerning: (i) discussions with FDA about the concerns expressed in connection with the CRL, CAC ¶¶ 199, 206, 208, 231; (ii) qualifications of the CorMedix team, *id.* ¶¶ 205, 212, 232; and (iii) the Company's efforts to complete work required to re-submit the DefenCath NDA, *id.* ¶¶ 206, 208–09, 212, 231–32, 242, 287, 289.[10] None of the identified statements suggest that Defendants claimed expertise that would have allowed them to predict future FDA concerns about information submitted by the CMO and later issue a CRL. Nor did Defendants improperly suggest investors should blindly trust them regarding manufacturing related issues. To the contrary, CorMedix repeatedly disclosed the risks of issues arising with the CMO as well as the NDA. Ex. 1 at 18–19, 26–27; Ex. 2 at 19–20, 22, 31–33.

In the cases Plaintiff cites to support his "expert knowledge" argument, the defendants were alleged to have held themselves out as "authorities" on or having

---

[10] With respect to Armstrong, Plaintiff cites only accurate statements concerning: (i) his knowledge and experience, CAC ¶¶ 10, 13, 186, 232, and (ii) communications with FDA or completion of the NDA, CAC ¶¶ 12, 13, 105, 114, 184, 186, 203, 231, 287, 289. Plaintiff fails to explain how any such statements would have alerted him of FDA's concern about the CMO in advance of the CRL.

"first-hand knowledge" of specific, non-public data that directly contradicted contemporaneous misstatements to investors. For example, in *SEB*, plaintiff specifically alleged that defendant officers had knowledge of clinical data showing that the drug did not deter abuse, but nonetheless held themselves out as "authoritative sources" on that specific data while misleading investors concerning its contents. 351 F. Supp. 3d at 906. Similarly, in *PTC*, plaintiff adequately alleged scienter where defendants repeatedly assured investors that certain drug trial data was adequate *after* FDA had specifically informed them that it would not accept the data. 2017 WL 3705801, at *16. And in *Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer L.P.*, plaintiff alleged a defendant "held himself out as having personal knowledge" about a project, but made false statements about information submitted to government agencies about that project. 532 F. Supp. 3d 189, 231 (E.D. Pa. 2021).

Here, in contrast, Defendants are, at most, alleged to have made truthful statements about their general knowledge of FDA procedures and processes and their efforts to secure the eventual approval of the DefenCath NDA. CAC ¶¶ 199, 205, 206, 208–09, 212, 231–32, 242, 287, 289. Plaintiff does not allege that any of the Defendants claimed expertise on volume overfill or any other specific manufacturing issues flagged by FDA, and it is not reasonable to infer scienter merely because approval took longer than expected. Without more, this is merely impermissible fraud by hindsight. *Cal. Public Employees' Ret. Sys. v. Chubb*, 394

F.3d 126, 158 (3d Cir. 2005) (rejecting "attempts to plead fraud by hindsight").

### C.      There Are Substantial Competing Inferences Against Scienter.

Considering all the allegations in the CAC and the documents it incorporates by reference, the inference Plaintiff seeks to draw here—that CorMedix knowingly deceived the public about the prospect of approval for the DefenCath NDA—has been held implausible in the absence of far more detailed and specific allegations of scienter. *Inspire Pharm.*, 549 F.3d at 627. The more plausible inference is that Defendants worked in good faith to secure the approval of the DefenCath NDA and provided investors with forward-looking statements that were accurate when made. *See infra* §§ II.B–II.C. Plaintiffs' cases on this point are inapposite because they involved specific allegations of known deficiencies in NDAs. *See Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 323–24, 333 (E.D. Pa. 2020) (defendant "knew about" contemporaneous concerns expressed by FDA that were later publicly revealed); *In re Celegene Corp. Sec. Litig.*, 2019 WL 6909463, at *8 (D.N.J. Dec. 19, 2019) (former employee stated that executives "knew about" undisclosed adverse Phase I trial results); *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 346, 348–49 (E.D. Pa. 2014) (identifying concealed FDA statements and establishing defendants misled investors about FDA feedback). Here, there is no well-pled allegation that Defendants knew the FDA would identify deficiencies at the manufacturing facility.

## II.    PLAINTIFF FAILS ADEQUATELY TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION.

Under both § 10(b) of the '34 Act and § 11 of the '33 Act (for claims sounding in fraud), a plaintiff must allege, with particularity: (i) a material false or misleading statement or omission; and (ii) the reasons the statement or omission was "misleading at the time it was made," *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002); Mot. at 22–23 (citing *Edinburgh* and *Galena*). Here, the Section 11 claim sounds in fraud and thus Rule 9(b) applies, Mot. at 38–39 n.22, but the claim also fails under Rule 8(a).[11]

### A.    Plaintiff Fails to Identify Any Misrepresentation Regarding the "Status of Facilities Manufacturing DefenCath."

Plaintiff claims that the CAC "properly pled that Defendants made direct misrepresentations about the adequacy of the Company's manufacturer," *see* Opp'n at 13, but fails to adequately identify any falsity or material omission in these statements. *See id.* at 13–15 (citing CAC ¶¶ 182, 232, 243, 263, 306.). Instead, Plaintiff points to true and materially complete statements regarding CorMedix's experience with Neutrolin, its communications with FDA, and its extensive effort to complete the NDA and prepare for commercialization. *Id.* For example, in ¶ 182,

---

[11] CorMedix Defendants adopt the arguments in the Underwriter Defendants' reply brief, including that Plaintiff has waived any argument relating to § 11 standing, that Plaintiff has not alleged an actional misrepresentation or omission, and that Plaintiff has failed to state a claim under Items 105 or 303 of Regulation S-K.

11

Plaintiff refers to statements made in 2019 regarding CorMedix's experience with preparing Neutrolin for other markets, efforts regarding U.S. product development, and intent to submit a complete NDA. CAC ¶ 182. That FDA later issued a CRL does not make any of these statements false when made.

The Opposition also incorrectly argues that a CorMedix officer described the CRL as being "of minimal importance and [one that] could be quickly and easily resolved." Opp'n at 14 (citing CAC ¶¶ 285–90). Not so. As alleged in the CAC, the officer actually stated that they were "working as fast as we can" and that "[w]e *believe* we have within CorMedix and the CMO, the resources and capabilities to achieve successful resolution of the manufacturing deficiencies to the satisfaction of the FDA." CAC ¶ 288 (emphasis added). Plaintiff fails to explain how such aspirational statements were untrue, nor could he: the primary information sought by FDA in connection with the CRL was from the CMO, not CorMedix. Mot. at 33–34; CAC ¶ 102; Ex. 8 at 6; Ex. 17 at 6.[12]

### B. Plaintiff Fails to Allege Any Actionable Statements About the Timing or Likelihood of FDA Approval.

Plaintiff contends Defendants' forward-looking statements that the NDA approval process was "on schedule" were false and misleading because CorMedix

---

[12] Plaintiff fails to establish the forward-looking statements were made with actual knowledge, Opp'n at 15—an independent basis to find the statements are protected by the safe harbor. Mot. at 20–24; Mem. of Law. in Supp. of Underwriters' Mot. to Dismiss at 11 ("Underwriters' Mot."), ECF No. 61-1.

allegedly withheld information about the completeness of the NDA and the CMO's capabilities. Opp'n at 15–17. However, Plaintiff fails to specify what information Defendants purportedly withheld and ignores that FDA would not have accepted the NDA for review if it was not complete. Plaintiff also incorrectly claims that Defendants told investors FDA was "inclined to approve" the DefenCath NDA, *id*. at 17–18, but CorMedix said no such thing. Instead, as alleged in the CAC, CorMedix stated that FDA was "supportive" and that meetings between CorMedix and FDA were "very positive." *Id.* at 18. Plaintiff fails to allege any facts, such as from confidential witnesses, contradicting these statements.[13] *See Avaya*, 564 F.3d at 261. The subsequent receipt of a CRL does not indicate that the prior descriptions of conversations with FDA were erroneous, much less misleading.

### C.    Plaintiff Fails to Show that the PSLRA Safe Harbor is Inapplicable to the Challenged Misstatements.

Plaintiff cannot sidestep the safe harbor immunizing forward-looking statements that are "accompanied by meaningful cautionary language," or not made with actual knowledge. Mot. at 23–24 (citing *Williams v. Globus Med., Inc.*, 869 F.3d 235 (3d Cir. 2017)); Underwriters' Mot. at 11. While Plaintiff disputes that CorMedix statements about the DefenCath NDA were accompanied by meaningful

---

[13] Defendants' general expressions of optimism about the ultimate approval prospects for the DefenCath NDA are non-actionable puffery. Mot. at 26–29. No actual false statement or guarantee of success is identified in the CAC, regardless of Plaintiff's attempts to "spin" the Defendants' statements.

cautionary language, it is indisputable that CorMedix warned investors that approval depended on the actions of third parties like the CMO, and that approval could be delayed or never occur at all, including due to manufacturing issues. Mot. at 25–26. Faced with CorMedix's robust and on-point cautionary language, Plaintiff argues that the disclosures were ineffective because of the "risks that had already occurred or were in the process of occurring." Opp'n at 22. But as set forth above, *supra* § I.B., Plaintiff fails to allege particularized facts supporting his conclusion, and instead impermissibly relies on fraud-by-hindsight. Thus, *In re Bristol-Myers Squibb Sec. Litig.*, 2005 WL 2007004, at *52 (D.N.J. Aug. 17, 2005); *see* Opp'n at 22–24, is inapposite. Plaintiff fails to allege facts showing CorMedix knew "with near certainty" of undisclosed material risks.

### III.    PLAINTIFF FAILS ADEQUATELY TO ALLEGE LOSS CAUSATION.

Plaintiff effectively concedes that he failed to identify a decline in CorMedix stock in response to a corrective disclosure. *See* Mot. at 36–37; Opp'n at 34–35. Rather, Plaintiff argues that a "materialization of a concealed risk" was connected to a decline in the price of CorMedix stock. Opp'n at 34. But even under a "materialization of the risk" theory, Plaintiff must, but fails to, show that the "materialization of an *undisclosed* risk caused the alleged loss." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 429 (3d Cir. 2007). In response to Defendants' argument that the announcement of the specific concerns motivating the CRL caused an

14

*increase* in stock price, Plaintiff argues that "Defendants continued to mislead investors." Opp'n at 35. But Plaintiff fails to allege that following the CRL, investors were unaware of the risk that manufacturing issues may delay the NDA's approval. *McCabe*, 494 F.3d at 426 (plaintiff must show "defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss") (emphasis added). Thus, even under a "materialization of the risk" theory, Plaintiff's allegations fall short.

## IV.    PLAINTIFF FAILS TO PLEAD SCHEME OR CONTROL-PERSON LIABILITY.

Plaintiff's claims for "scheme-based liability" under Rule 10b-5(a) or (c) and control person liability fail because the only allegedly deceptive acts of which Plaintiff complains are the same as those that form his deficient § 10(b) claim and he does not allege a predicate violation of the securities laws. Mot. at 36; 40 n.25. The sole case Plaintiff cites to support his "scheme liability" theory is inapposite. *In re ForceField Energy Inc. Sec. Litig.*, 2017 WL 1319802, at *2–4 (S.D.N.Y. Mar. 29, 2017) (individuals indicted for securities fraud and supported by witnesses).

### CONCLUSION

For all the foregoing reasons, the CorMedix Defendants respectfully request that the Court dismiss the Complaint with prejudice.

15

Dated: May 26, 2022                     DECHERT LLP


                                        s/ Paul C. Kingsbery
                                        _____

                                        David A. Kotler
                                        Paul C. Kingsbery
                                        1095 Avenue of the Americas
                                        Three Bryant Park
                                        New York, New York 10036
                                        Tel.: (212) 698-3500
                                        Fax: (212) 698-3599
                                        david.kotler@dechert.com
                                        paul.kingsbery@dechert.com

                                        Joni S. Jacobsen (*pro hac vice*)
                                        Angela M. Liu (*pro hac vice*)
                                        35 West Wacker Drive, Suite 3400
                                        Chicago, Illinois 60601
                                        Tel.: (312) 646-5800
                                        Fax: (312) 646-5858
                                        joni.jacobsen@dechert.com
                                        angela.liu@dechert.com

                                        *Counsel for Defendants CorMedix Inc., Khoso Baluch, Robert Cook, Matthew David, Phoebe Mounts, John L. Armstrong, Janet Dillione, Myron Kaplan, Alan W. Dunton, Steven Lefkowitz, Paulo F. Costa, and Greg Duncan*

16

## <u>Certificate of Service</u>

I hereby certify that, on this date, I caused a true and complete copy of the foregoing Reply Memorandum in Further Support of the CorMedix Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint to be electronically filed with the United States District Court for the District of New Jersey, and to be served upon all parties by means of the ECF filing system. I further certify that the foregoing statement made by me is true. I am aware that if the foregoing statement made by me is willfully false, I am subject to punishment.

Dated: May 26, 2022

s/ Paul C. Kingsbery
_____
Paul C. Kingsbery
