O'MELVENY & MYERS LLP
Allen W. Burton  (NJ 020742001)
7 Times Square
New York, New York 10036
Tel.: (212) 326-2000
Fax: (212) 326-2061
aburton@omm.com

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| IN RE CORMEDIX INC. SECURITIES LITIGATION | : : : : | Civil Action No. 2:21-cv-14020-JXN-CLW |
| This Document Relates To: ALL ACTIONS | : : : : : : : : | <u>CLASS ACTION</u>  **Motion Day: June 6, 2022**  ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE UNDERWRITERS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT ....................................................................................................3

I.    PLAINTIFF'S FAILURE TO RESPOND TO DEFENDANTS' SECTION 11 STANDING ARGUMENT REQUIRES DISMISSAL OF THE CAC'S SECTION 11 CLAIM.........................................................3

II.   THE CAC'S SECTION 11 CLAIM SHOULD ALSO BE DISMISSED BECAUSE THE CAC FAILS TO STATE A CLAIM. ............................5

    A.    Plaintiff Has Not Adequately Alleged Any Material Misstatement or Omission. ..............................................................5

    B.    Plaintiff Fails to State a Section 11 Claim under Items 105 or 303 of Regulation S-K. ...................................................10

CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

CASES

*Alitsource S.A.R.L. v. Szumanski*, 2022 WL 909872 (D.N.J. Mar. 29, 2022) ...........4

*Bauer v. Eagle Pharms., Inc.*, 2017 WL 2213147 (D.N.J. May 19, 2017) .........8, 10

*Frater v. Hemispherex Biopharma, Inc.*, 996 F. Supp. 2d 335 (E.D. Pa. 2014) .......9

*Howard v. Arconic Inc.*, 2021 WL 2561895 (W.D. Pa. June 23, 2021)..................12

*Hull v. Global Dig. Sols., Inc.*, 2017 WL 6493148 (D.N.J. Dec. 19, 2017)..............5

*In re Campbell Soup Co. Sec. Litig.*, 2020 WL 7022655 (D.N.J. Nov. 30, 2020)....5

*In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463 (D.N.J. Dec. 19, 2019) ...........9

*In re Digital Island Sec. Litig.*, 357 F.3d 322 (3d Cir. 2004) ...................................9

*Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009).... 8, 9, 10

*Jimenez v. T.D. Bank, N.A.*, 2021 WL 4398754 (D.N.J. Sept. 25, 2021).................5

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874 (E.D. Pa. 2018).........9

*Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049 (D.N.J. Jan. 21, 2021).10

*Tomaszewski v. Trevena*, 482 F. Supp. 3d 317 (E.D. Pa. 2020)...............................9

*Wandel v. Jing Gao*, 2022 WL 768975 (S.D.N.Y. Mar. 14, 2022)........................11


STATUTES

15 U.S.C. § 78u-5(c)(1) ............................................................................................9

Defendants B. Riley Securities, Inc., and Needham & Company, LLC, the Underwriters for the November 27, 2020 secondary securities offering by CorMedix, Inc., respectfully submit this reply memorandum of law in further support of their motion, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the claim brought under Section 11 of the Securities Act of 1933, the only claim against the Underwriters.[1]

## PRELIMINARY STATEMENT

Plaintiff fails in the Opposition to address Defendants' showing that Plaintiff lacks Section 11 standing because the CAC does not adequately plead that Plaintiff purchased CorMedix shares traceable to the Offering. Plaintiff has therefore waived or abandoned his case for Section 11 standing. On that basis alone, the Section 11 claim should be dismissed.

The Section 11 claim also fails on the merits of the pleading. In his Opposition, Plaintiff repositions the Section 11 claim as based on the core allegation that Defendants knew or should have known that the DefenCath NDA lacked sufficient third-party CMO data to achieve FDA approval, resulting in a

---

[1] As used in this Reply Memorandum, (i) "Opening Brief" means the March 28, 2022 Memorandum of Law in Support of the Underwriters' Motion to Dismiss, cited as "(Opening Br. __)," and (ii) "Opposition" means the April 27, 2022 Lead Plaintiff's Opposition to Defendants' Motions to Dismiss, cited as "(Opp. __)." Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Opening Brief or the CAC. Unless otherwise specified, all emphasis is added, and all internal citations and quotation marks are omitted.

magnified risk that the FDA would issue a CRL.  But Plaintiff cannot identify any allegation in the CAC showing that Defendants knew at the time of the Offering that the DefenCath NDA was deficient.  And while Plaintiff generally refers to CorMedix's ongoing interactions with the FDA, he cannot identify any non-conclusory allegation describing the deficiency the FDA allegedly identified or the additional data the FDA allegedly requested in any pre-Offering communication. Plaintiff simply makes the leap from CorMedix's public disclosure that the FDA requested "some additional data" and "planned to assess the commercial readiness of the various manufacturing facilities at the time of the NDA review," to the unsupported conclusion that Defendants knew or should have known that the DefenCath NDA would likely result in a CRL.  That hindsight conclusion is not sufficient to plead a Section 11 claim.

Without the support of his central premise, Plaintiff's other Section 11 allegations cannot stand.  Indeed, Plaintiff's cursory two-page Section 11 falsity discussion does not identify *any* other alleged misstatement or omission in the Offering Documents.  It is only in the Opposition's Section 10(b) discussion that Plaintiff argues that the Offering Documents were false and misleading based on (i) statements indicating that the DefenCath NDA was "on track" for approval, and (ii) risk disclosures concerning potential COVID-19 delays, and third-party CMO data deficiencies and noncompliance with manufacturing standards.  But that

2

argument merely repeats the same unsupported, conclusory allegations of undisclosed manufacturing issues and Defendants' knowledge that the NDA was deficient.

Moreover, the allegation that Defendants "should have known" that the NDA was deficient cannot defeat Defendants' showing that the Offering Documents' forward-looking "on track" statements are protected by the PSLRA's safe harbor—only factual allegations showing "knowing falsity" could deprive such statements of PSLRA protection. And Plaintiff's assertions that Defendants failed to comply with Items 105 and 303 of Regulation S-K are yet another iteration of the same flawed allegations and, thus, likewise fail to state a Section 11 claim.

Plaintiff's flawed Section 11 claim, the only claim asserted against the Underwriters, should be dismissed.

## ARGUMENT

## I.     PLAINTIFF'S FAILURE TO RESPOND TO DEFENDANTS' SECTION 11 STANDING ARGUMENT REQUIRES DISMISSAL OF THE CAC'S SECTION 11 CLAIM.

The Underwriters demonstrated in their opening brief that Plaintiff has failed to plead Section 11 standing, based on the following:

- To plead Section 11 standing, Plaintiff must "trace" its shares to the securities offering that is the subject of the Section 11 claim.

- Pleading tracing in the secondary public offering context—where the shares in that offering join millions of other identical and fungible shares already in the market—requires a greater level of factual specificity.

- A mere "formulaic" tracing recitation fails the factual-specificity pleading requirement for CorMedix's secondary offering.

- The CAC pleads merely a formulaic tracing recitation, with no factual specificity.

- Plaintiff therefore has failed to plead Section 11 standing.

(Opening Br. 5–6.)  Plaintiff's response?  Silence.  Nowhere in Plaintiff's forty-page Opposition is there even a mention of Section 11 standing or the requirement to plead facts showing tracing to the Offering.

That failure to respond constitutes a waiver or abandonment on the standing issue, requiring the Section 11 claim's dismissal.  In *Alitsource S.A.R.L. v. Szumanski*, 2022 WL 909872 (D.N.J. Mar. 29, 2022), the court held that "[w]here an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant."  The court in *Alitsource* dismissed a common law fraud claim after the plaintiff failed to respond to defendant's motion-to-dismiss argument that the complaint did not satisfy Rule 9(b)'s fraud-particularity pleading requirements.[2]  Numerous other

---

[2]  *Alitsource S.A.R.L. v. Szumanski*, 2022 WL 909872, at *12 (D.N.J. Mar. 29, 2022).

courts have not hesitated to dismiss claims on this basis, including in the putative

class action context,[3] and this Court should do the same.

## II. THE CAC'S SECTION 11 CLAIM SHOULD ALSO BE DISMISSED BECAUSE THE CAC FAILS TO STATE A CLAIM.

### A. Plaintiff Has Not Adequately Alleged Any Material Misstatement or Omission.

As the Underwriters have shown, the CAC's core allegation—that

Defendants knew or should have known at the time of the Offering that the FDA

was unlikely to approve CorMedix's DefenCath NDA— fails to state a Section 11

claim because (i) it is speculative; (ii) there was no generalized duty to disclose in

the Offering Documents details concerning CorMedix's discussions with the FDA;

and (iii) the Offering Documents' forward-looking statements concerning the

expected timeline for the FDA approving the NDA are protected by the PSLRA

safe harbor and the "bespeaks caution" doctrine.  (Opening Br. 7–13.)  Plaintiff

---

[3] *See, e.g., Jimenez v. T.D. Bank, N.A.*, 2021 WL 4398754, at \*14 (D.N.J. Sept. 25, 2021) (dismissing certain putative class action claims under Electronic Funds Transfer Act where Plaintiff failed to respond to Defendants' arguments; "[t]he failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in waiver of that count."); *In re Campbell Soup Co. Sec. Litig.*, 2020 WL 7022655, at \*5 n.2 (D.N.J. Nov. 30, 2020) (dismissing claims in putative securities class action where "Plaintiffs did not respond to [Defendants'] argument in their opposition and thus have waived this theory."); *Hull v. Global Dig. Sols., Inc.*, 2017 WL 6493148, at \*18 (D.N.J. Dec. 19, 2017) (dismissing claim in putative securities class action based on *Affiliated Ute* reliance presumption where "Plaintiff did not respond in substance to the Moving Defendants[']" argument that presumption did not apply to plaintiff's claim).

tacitly acknowledges the Section 11 claim's flaws by attempting to recast it in his Opposition. He now argues that the claim is not premised on Defendants' failure to predict that the FDA would issue the CRL, but rather on Defendants' alleged knowledge that the NDA allegedly lacked sufficient third-party CMO data to achieve FDA approval, which led to an enhanced risk that the FDA would issue a CRL. (Opp. 22, 38.) That reformulation is unavailing for two main reasons.

First, the Opposition fails to identify any allegation in the CAC showing that Defendants knew as of the Offering Date that the DefenCath NDA was deficient. To the contrary, Plaintiff elsewhere in the Opposition says that the CAC's central premise is that "CorMedix submitted the DefenCath NDA without first competently verifying its completeness" (*id*. 7–8, citing CAC ¶ 107)—that is the opposite of alleging actual knowledge. Moreover, Plaintiff ignores that the FDA's concerns focused primarily on data submitted by the third-party CMO—not CorMedix.

Second, Plaintiff's assertion that the CAC can be read to allege that Defendants "should have known" that the DefenCath NDA was deficient (Opp. 22, 38) flies in the face of the CAC's own allegation that the FDA accepted the DefenCath NDA for filing and priority review in August 2020, several months before the Offering (CAC ¶ 138). As the CorMedix brief explained, and Plaintiff

6

does not dispute, the FDA does not accept an NDA for filing and further review unless it deems the filing "complete."  (CorMedix Br. 6.)

Plaintiff responds that the CAC alleges that the FDA communicated before the Offering "serious" and "grave" concerns about the CMC program and data for the DefenCath NDA.  (*See* Opp. 39–40, 40 n.12.)  That is wrong.  The CMC program—*i.e.*, chemistry, manufacturing, and controls program—involves far more than just manufacturing.  (CorMedix Br. 17.)  And the CAC contains no non-conclusory allegation describing any pre-Offering FDA communication to CorMedix about what data the FDA requested following the CMC meeting, let alone that the data requested related to the third-party CMO or issues addressed in the CRL.  The CAC does not even allege that the FDA harbored uncommunicated "serious" or "grave" concerns—in fact, neither of those adjectives or any equivalent appears anywhere in the CAC.  Rather, the CAC simply references CorMedix's public disclosure that the FDA requested "some additional data" and "planned to assess the commercial readiness of the various manufacturing facilities at the time of the NDA review" (CAC ¶ 105), and presumes that the FDA made additional, undisclosed, adverse comments about CorMedix's CMO and manufacturing program data.

Without the foundational allegation of his Section 11 claim—that Defendants knew or should have known before the Offering that the DefenCath

NDA was deficient—Plaintiff's other Section 11 allegations collapse.  Plaintiff's two-page response on the Section 11 falsity issue does not identify *any* other alleged misstatement or omission in the Offering Documents (Opp. 38–40), but the Opposition's Section 10(b) discussion (*id*. 11–35) attacks the Offering Documents for allegedly misleading (i) statements indicating that the DefenCath NDA was "on track" for approval (*id*. 15–16), and (ii) risk disclosures concerning potential COVID-19 delays, and CMO data deficiencies and noncompliance with manufacturing standards (*id*. 18–22).  None of these allegations states a Section 11 claim.

The Offering Documents' statements concerning whether or when the FDA would approve the DefenCath NDA are self-evidently forward-looking.  Plaintiff does not dispute that the "on track" statements discuss future events.  Courts deem such statements forward-looking,[4] rendering inapposite the cases Plaintiff cites on false statements and selective disclosure (*id*. 16–17), none of which addresses

---

[4]  *See also Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 254–56 (3d Cir. 2009) ("*Avaya*") (affirming dismissal of Section 10(b) claims based on forward-looking statements and holding that "we are on track to meet our [financial] goals for the year" is a forward-looking statement); *Bauer v. Eagle Pharms., Inc.*, 2017 WL 2213147, at *9 (D.N.J. May 19, 2017) (citing *Avaya* and holding that "statements relating to anticipated FDA approval of the NDA" are forward-looking).

forward-looking statements.[5] Nor does Plaintiff dispute that such forward-looking statements would be protected under the PSLRA safe harbor and the "bespeaks caution" doctrine if accompanied by meaningful cautionary statements. (Opening Br. 11.) But the only objections Plaintiff raises to the Offering Documents' cautionary language are that (i) there were "undisclosed manufacturing issues" and (ii) Defendants should have known that the NDA was deficient. (Opp. 16, 22–24.) Both objections fail—Plaintiff does not identify any non-conclusory allegation in the CAC supporting either objection, and the "should have known" argument is independently deficient because only a sufficient "knowing falsity" allegation could vitiate the PSLRA's safe harbor.[6] Indeed, Plaintiff's failure to plead facts

---

[5] *See In re Digital Island Sec. Litig.*, 357 F.3d 322, 329 n.10 (3d Cir. 2004) (affirming dismissal of Exchange Act Section 14(e) claim and noting in dicta that a duty to disclose can arise from "inaccurate, incomplete or misleading prior statement"); *In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463, at *18 (D.N.J. Dec. 19, 2019) (motion to dismiss Section 10(b) claim denied in part based on defendant's admitted failure to disclose negative clinical data); *Tomaszewski v. Trevena*, 482 F. Supp. 3d 317, 331 (E.D. Pa. 2020) (motion to dismiss Section 10(b) claim denied where plaintiff admittedly failed to disclose disagreements with FDA); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 898 (E.D. Pa. 2018) (motion to dismiss Section 10(b) claim denied where no dispute defendants issued misleadingly positive statements about drug trial but failed to disclose unfavorable data); *Frater v. Hemispherex Biopharma, Inc.*, 996 F. Supp. 2d 335, 348–49 (E.D. Pa. 2014) (motion to dismiss Section 10(b) claim denied where court concluded that defendants withheld information relevant to NDA approval).

[6] *See Avaya*, 564 F.3d at 259 ("defendants' forward-looking statements come within the Safe Harbor as long as the Complaint' allegations fail to give rise to a strong inference that defendants actually knew of the statements' falsity."); *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *19 (D.N.J. Jan. 21,

9

showing knowing falsity would require dismissal under the PSLRA safe harbor, even if the Offering Documents had not contained adequate cautionary language.[7]

And these same pleading failures negate Plaintiff's assertion that Defendants misled investors by disclosing risks that "had already come to pass."[8]

### B.  Plaintiff Fails to State a Section 11 Claim under Items 105 or 303 of Regulation S-K.

Plaintiff spends far more time explaining what type of disclosures Regulation S-K Items 105 and 303 require than attempting to demonstrate how the CAC adequately alleges that the Offering Documents did not comply with those requirements.  Indeed, Plaintiff offers just three sentences of "analysis" that simply

---

2021) ("challenged statements are not actionable as forward-looking statements under the PSLRA's safe harbor" where plaintiff "failed to show that any forward-looking statements were made with actual knowledge that the statement was false or misleading."); *Bauer*, 2017 WL 2213147, at *11 (holding that PSLRA safe harbor applied to forward-looking statements about likelihood FDA would approve NDA where insufficient allegation that statements "made with actual knowledge of their falsity.").

[7] *Avaya*, 564 F.3d at 259 (PSLRA safe harbor "provides a ground for dismissing Shareholders' claims relating the forward-looking statements . . . that would apply even assuming defendants' cautionary language was inadequate."); *see also* 15 U.S.C. § 78u-5(c)(1) (listing in disjunctive requirements for applying safe harbor to forward-looking statements: (i) "accompanied by meaningful cautionary statements," or (ii) "immaterial," *or* (iii) failure to plead "actual knowledge" that statement was false or misleading).

[8] *See Avaya*, 564 F.3d at 259 (rejecting argument that "cautionary language cannot be 'meaningful' . . . when it identifies risks that defendants know have already eventuated" because plaintiff failed to allege knowing falsity of forward-looking statements to which cautionary language applied).

10

repeats the conclusory allegations discussed above, and asserts that Items 105 and 303 required their disclosure. (Opp. 39–40.) Plaintiff does not cite a single case in support of his distorted application of Items 105 and 303. (*Id.*)

For example, Plaintiff asserts that Item 105 required that the Offering Documents disclose "the increased risks posed by the FDA's serious concerns regarding the CMC program data" and "the FDA's grave concerns regarding the data supporting the CMC program." (Opp. 40, 40 n.12.) But as shown above, the CAC does not adequately plead that the FDA communicated (or even had) any such "serious" or "grave" concerns—let alone that the CMC program solely related to manufacturing. (*See supra* 6–7.) Plaintiff does not claim that CorMedix failed to disclose the risk that FDA might not approve the NDA, only that the Offering Documents did not disclose some assertedly "heightened" risk that the CorMedix NDA would not be approved. But Plaintiff cannot use the hindsight of knowing that the FDA subsequently issued a CRL to concoct an Item 105 "most significant factor" omission.[9]

Plaintiff's Item 303 argument is even more simplistic. Plaintiff takes his unsupported allegation that Defendants knew "the FDA *likely* would not approve

---

[9] *See Wandel v. Gao*, 2022 WL 768975, at *11 (S.D.N.Y. Mar. 14, 2022) (granting motion to dismiss and holding that "to state a claim under Item 105, an issuer must know, at the time of the IPO, about an undisclosed risk factor that could seriously affect its present or future business.").

11

the NDA based on the data and application submitted," and slaps a "known uncertainty" label on it for Item 303 purposes. (Opp. 40.) As explained in the Opening Brief, "it is not enough to allege that [issuer's] management could have known, or even should have known, about the existing trend, event or uncertainty. . . . Hypothetical knowledge does not cut it, even … at the pleading stage."[10] (Opening Br. 15.) But Plaintiff only points to, at best, "hypothetical knowledge" allegations. (Opp. 40.) Plaintiff cannot support an Item 303 theory with his inadequate allegation that Defendants knew the DefenCath NDA was deficient, just as that allegation cannot support a Section 11 claim generally.

---

[10] *Howard v. Arconic Inc.*, 2021 WL 2561895, at *25 (W.D. Pa. June 23, 2021).

## CONCLUSION

For the reasons above and those in the Opening Brief, the Section 11 claim should be dismissed because Plaintiff lacks standing and the CAC fails to plead a Section 11 claim, and the Underwriters should thus be dismissed from the case.

Dated: May 27, 2022

**O'MELVENY & MYERS**

*/s/ Allen W. Burton*
Allen W. Burton  (NJ 020742001)
Jonathan Rosenberg (*pro hac vice*)
Daniel L. Cantor (*pro hac vice*)

7 Times Square
New York, New York 10036
Tel.: (212) 326-2000
Fax: (212) 326-2061
aburton@omm.com
jrosenberg@omm.com
dcantor@omm.com

*Counsel for Defendants B. Riley Securities, Inc., and Needham & Company, LLC*

13