# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE CORMEDIX INC. SECURITIES LITIGATION | : : : : : : : : | Civil Action No.: 2:21-cv-14020-JXN-CLW<br><br>CLASS ACTION<br><br>**Motion Day: February 21, 2023** |
| This Document Relates To: ALL ACTIONS | : : : : : : : : : : | ORAL ARGUMENT REQUESTED |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DECHERT LLP
Joni S. Jacobsen*
Angela M. Liu*
35 West Wacker Drive
Suite 3400
Chicago, IL 60601
Tel: (312) 646-5813
Fax: (312) 646-5858
joni.jacobsen@dechert.com
angela.liu@dechert.com

DECHERT LLP
David A. Kotler
Steven Pellechi*
1095 Avenue of the Americas
New York, New York 10036
Tel: (212) 698-3500
Fax: (212) 698-3599
david.kotler @dechert.com
steven.pellechi@dechert.com

*pro hac vice admitted*

*Attorneys for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................2

I.     PLAINTIFF FAILS TO ADEQUATELY ALLEGE SCIENTER.................2

       A.     Motive Allegations Weigh Against an Inference of Scienter. .............2

       B.     No Particularized Facts Support a Strong Inference of Scienter. ........2

             1.     Positions, Access To Unidentified Information Insufficient. .................................................................2

             2.     The "Core Operations" Doctrine Is Unavailable. ......................4

             3.     Knowledge of FDA Process Does Not Establish Scienter. .......5

       C.     There Are Substantial Competing Inferences Against Scienter. .........7

II.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE A MATERIAL MISSTATEMENT OR OMISSION UNDER SECTIONS 10(b) OR 11. .............................................................................................................8

       A.     Misrepresentation Regarding the Manufacturing Facilities.................8

       B.     Plaintiff Fails to Allege Any Actionable Statements About the Timing or Likelihood of FDA Approval.............................................11

       C.     Safe Harbor Protects Defendants' Forward-Looking Statements. .......................................................................................12

III.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE LOSS CAUSATION UNDER SECTION 10(b)......................................................13

IV.   PLAINTIFF FAILS TO PLEAD A SECTION 11 CLAIM ........................14

CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

*CASES*

*Aldridge v. A.T. Cross Corp.,*
  284 F.3d 72 (1st Cir. 2002) ...............................................................3

*Alitsource S.A.R.L. v. Szumanski,*
  No. 21-03293, 2022 WL 909872 (D.N.J. Mar. 29, 2022) ...............................14

*Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer L.P,*
  532 F. Supp. 3d 189 (E.D. Pa. 2021)......................................................6

*Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health,*
  503 F.3d 256 (3d Cir. 2007).............................................................. 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .....................................................................14

*Brennan v. Zafgen,*
  853 F.3d 606 (1st Cir. 2017)..............................................................4

*Carmignac Gestion, S.A. v. Perrigo Co. PLC,*
  No. 17-10467, 2019 WL 3451523 (D.N.J. July 31, 2019) ................................5

*Cozzarelli v. Inspire Pharm. Inc.,*
  549 F.3d 618 (4th Cir. 2008) .............................................................2

*Frater v. Hemispherx Biopharma, Inc.,*
  996 F. Supp. 2d 335 (E.D. Pa. 2014)...................................................8, 12

*Hall v. Johnson & Johnson,*
  No. 18-1833, 2019 WL 7207491 (D.N.J. Dec. 27, 2019) .............................. 6-7

*Hoey v. Insmed, Inc,*
  No. 16-4323, 2018 WL 902266 (D.N.J. Feb. 15, 2018)..............................14, 15

*In re Bristol-Myers Squibb Sec. Litig.,*
  No. 00-1990, 2005 WL 2007004 (D.N.J. Aug. 17, 2005).................................13

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir 1997) ..............................................................8

ii

*In re Campbell Soup Co. Sec. Litig.*,
  145 F. Supp. 2d 574 (D.N.J. 2001)........................................................................3

*In re Celegene Corp. Sec. Litig.*,
  No. 18-4772, 2019 WL 6909463 (D.N.J. Dec. 19, 2019) ...................................12

*In re Enzymotec Sec. Litig.*,
  No. 14-5556, 2015 WL 8784065 (D.N.J. Dec. 15, 2015) ...................................5

*In re Garrett Motion Inc. Sec. Litig.*,
  No. 20-7992, 2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ...............................9

*In re Genta, Inc. Sec. Litig.*,
  No. 04-2123, 2005 WL 2416970 (D.N.J. Sept. 30, 2005)...................................3

*In re PTC Therapeutics, Inc. Sec. Litig.*,
  No. 16-1124, 2017 WL 3705801 (D.N.J. Aug. 28, 2017)...............................3, 6

*In re Toronto-Dominion Bank Sec. Litig.*,
  No. 17-1665, 2018 WL 6381882 (D.N.J. Dec. 6, 2018) .....................................3

*In re Viropharma, Inc. Sec. Litig.*,
  No. 02-1627, 2003 WL 1824914 (E.D. Pa. Apr. 7, 2003) ..................................8

*Industriens Pensionsforsikring A/S v. Becton, Dickinson and Co.*,
  No. 2:20-cv-02155, 2021 WL 4191467 (D.N.J. Sept. 15, 2021) .........................5

*Institutional Inv. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) .....................................................................2, 7, 12

*Martin v. GNC Holdings, Inc.*,
  757 F. App'x 151 (3d Cir. 2018) ........................................................................4

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007) .............................................................................13

*McDermid v. Inovio Pharms.*,
  520 F. Supp. 3d 652 (E.D. Pa. 2021) ..................................................................6

*Roofer's Pension Fund v. Papa*,
  No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018)....................................7

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC,*
    351 F. Supp. 3d 874 (E.D. Pa. 2018) .......................................................3, 6, 12

*Skiadas v. Acer Therapeutics Inc.,*
    No. 1:19-cv-6137, 2020 WL 4208442 (S.D.N.Y. July 21, 2020) .....................12

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.,*
    No. 16-5034, 2018 WL 395730 (D.N.J. Jan. 12, 2018) .......................................3

*Tomaszewski v. Trevena, Inc.,*
    482 F. Supp. 3d 317 (E.D. Pa. 2020) ..................................................................8

*Utesch v. Lannett Co. Inc.,*
    385 F. Supp. 3d 408 (E.D. Pa. 2019) ..................................................................7

*Williams v. Globus Med., Inc.,*
    869 F.3d 235 (3d Cir. 2017) .............................................................................12

*Zucker v. Quasha,*
    891 F. Supp. 1010 (D.N.J. 1995), *aff'd*, 82 F.3d 408 (3d Cir. 1996) ...............15

**OTHER AUTHORITIES**

Fed. R. Civ. P.  8(a)...........................................................................................14

Fed. R. Civ. P.  9(b) .......................................................................................8, 14

17 C.F.R. § 240.10b-5.......................................................................................15

21 C.F.R. § 314.50(d)(1)......................................................................................9

iv

**INTRODUCTION**

Like the SAC,[1] Plaintiff's Opposition ("Opp'n") is full of sweeping conclusions, but is devoid of particularized facts—such as witnesses or internal documents—that alerted Defendants to manufacturing issues later identified in the CRLs. Instead, Plaintiff proffers unsupported assumptions and speculation.

Plaintiff relies on baseless conclusions that issues or data discussed during CorMedix's routine meeting with FDA regarding Chemistry, Manufacturing and Controls ("CMC") *necessarily* involved only manufacturing, and *must have* alerted Defendants to the issues ultimately identified in the CRLs. But the SAC contains no facts to support this conclusion. Moreover, Plaintiff further undercuts his theory by ignoring that concerns in the CRLs arose from information submitted by the *contract manufacturing organization* ("CMO"), not CorMedix, or from on-site FDA inspections of third parties—unrelated to DefenCath manufacturing activities.

Contrary to his cases, Plaintiff fails to allege Defendants' access to specific information contradicting public statements or requiring disclosure. Without any particularized facts, Plaintiff's entire case rests upon impermissible fraud-by-hindsight. Plaintiff's failure to plead standing or a claim under § 11, or loss causation, are equally fatal. The SAC should be dismissed with prejudice.

---

[1] Capitalized terms are defined in the Memorandum in Support of Defendants' Motion to Dismiss ("Motion" or "Mot."), ECF No. 86, and "Ex. __" to exhibits.

1

## ARGUMENT

### I.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE SCIENTER.

#### A.    Motive Allegations Weigh Against an Inference of Scienter.

Plaintiff does not dispute that an offering is "'not the type of financial benefit[]'" that supports scienter, or that Defendants' lack of stock sales negates any such inference. Mot. at 14; Opp'n at 25 n.6. And the motive to develop and commercialize a drug product does not constitute "a concrete and personal benefit." *Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 278 (3d Cir. 2009). The notion that Defendants inflated the stock price, but were "caught" before they could sell, Opp'n at 25 n.6, is beyond reason. The purported fraud spans three years, includes two CRLs, and involves several Defendants who ***purchased*** stock. Mot. at 14. "It is improbable that [a company] would stake its existence on a drug … [it] thought was doomed to failure." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008). The absence of motive "raises a compelling inference *against* scienter" and requires stronger circumstantial evidence. Mot. at 14-15.

#### B.    No Particularized Facts Support a Strong Inference of Scienter.

##### 1.    Positions, Access to Unidentified Information Insufficient.

Defendants' positions and access to ***unidentified*** information are insufficient to plead scienter.[2]  Plaintiff's own cases, Opp'n at 28-29, show that he must

---

[2] SOX certifications and officer resignations do not contribute to scienter where no facts showing (i) officers knew the SEC filings were false, Mot. at 19-20, or (ii)

2

identify *specific* information *possessed* by Defendants that contradicted their public statements or should have been disclosed. *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 904–06 (E.D. Pa. 2018) (defendants learned specific clinical data at internal meetings "that contradicted" public statements); *In re PTC Therapeutics, Inc. Sec. Litig.*, No. 16-1124, 2017 WL 3705801, at *16 (D.N.J. Aug. 28, 2017) (FDA notified defendants proposed NDA was "facially insufficient"); *In re Genta, Inc. Sec. Litig.*, No. 04-2123, 2005 WL 2416970, at *1–2, 6–7 (D.N.J. Sept. 30, 2005) (defendant "personally involved" in trial design knew of results contradicting statements).[3]

In stark contrast, Plaintiff relies on generalized references to a *CMC* meeting (which the CMO did not attend), "ongoing dialogue" with FDA, and requests for unidentified data to be included in the NDA.  Opp'n at 6-9.  Plaintiff fails, however, to identify any CorMedix employees, internal documents, or FDA

---

resignations resulted from "involvement in" fraud. *Id*. at 23. *In re Toronto-Dominion Bank Sec. Litig.*, No. 17-1665, 2018 WL 6381882, at *18 (D.N.J. Dec. 6, 2018) (Opp'n at 32, n.10).

[3] *See also In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (witnesses identified discussions with defendants about misconduct and defendants received contradictory data); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 77, 82-83 (1st Cir. 2002) (defendants' own statements show they knew, but failed to disclose, price protections and take back arrangements); *T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.* ("*Valeant*"), No. 16-5034, 2018 WL 395730, at *5–7 (D.N.J. Jan. 12, 2018) (particularized underlying facts regarding positions and includes defendants' admission of, and emails regarding, improper revenue inflation and defendant lying to investigators).

announcements that supposedly notified Defendants that their statements were incomplete or misleading. SAC ¶¶ 163, 386, 389 (positions), *id.* ¶¶ 395–96 (Defendants possessed **unspecified** "adverse non-public information"); Mot. at 15–17. No facts establish that, as of March 9, 2021, Defendants knew how deficiencies in 2021 CRL would be resolved, or that by resubmission, Defendants did not reasonably "believe" those deficiencies had been addressed. Mot. at 16-18, 36. Plaintiff also cannot rebut that the 2022 CRL involved deficiencies that had recently been identified during on-site inspections. *Infra* p. 10.[4] Plaintiff fails to allege a strong inference that any Defendant acted with scienter.[5]

### 2. The "Core Operations" Doctrine is Unavailable.

Plaintiff concedes that to invoke the core operations doctrine, the SAC must (but fails) to include "some additional allegation of **specific information conveyed to management and related to the fraud**," Opp'n at 30–31 (citing *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018) (emphasis added)); *see also*

---

[4] Plaintiff contends FDA guidance required Defendants to "know the inner workings" of the CMO, Opp'n at 2, but does not allege any regulation Defendants failed to follow, nor any facts demonstrating Defendants knew of issues with the CMO prior to the 2021 CRL. *Id.* CorMedix warned investors that FDA may not identify manufacturing issues until after the filing of the NDA. SAC ¶ 96.

[5] Plaintiff argues Defendants improperly seek "merits determinations" relating to whether (i) disclosures of interim FDA correspondence were required, and (ii) Defendants were "ignorant of blatant problems occurring at the CMO." Opp'n at 15-16 n.2. But Plaintiff cannot sidestep **his burden** of alleging Defendants knew of such issues. Mot. at 18-19 & n.13 (citing *Brennan v. Zafgen*, 853 F.3d 606, 614 (1st Cir. 2017) (plaintiffs must plead defendants knew disclosure was required).

4

*Industriens Pensionsforsikring A/S v. Becton, Dickinson and Company*, No. 2:20-cv-02155, 2021 WL 4191467, at *18-19 (D.N.J. Sept. 15, 2021) (core operations require "additional allegations connecting the executives' positions to their knowledge;" no allegations defendants were aware of what FDA would require, alleging "had access" insufficient).[6]

The SAC is devoid of any *specific* information conveyed to Defendants contradicting public statements or requiring disclosure. Opp'n at 31 (SAC ¶¶ 69 ("information concerning FDA approval . . . was highly material"); ¶ 160 (FDA meeting "very positive"), ¶ 225 (FDA was "supportive of the core manufacturing processes;" would assess CMO "beyond those specific to DefenCath;" unsupported conclusion CMO not meeting cGMP); ¶ 227 (optimism CMO can address future inspection issues); ¶¶ 96 & 255 (data requested for inclusion in CMC module), 356 (prelaunch process). Thus, Plaintiff cannot invoke the core operations doctrine.

### 3. Knowledge of FDA Process Does Not Establish Scienter.

Plaintiff attempts to allege scienter by arguing Defendants "spoke with authority" and "responded to questions" about the NDA process giving investors

---

[6] Unlike here, the cases on which Plaintiff relies, Opp'n at 30, allege **specific** facts supporting defendants' knowledge. *See* § I.B.3 (distinguishing *Hall*); *Carmignac Gestion, S.A. v. Perrigo Co. PLC*, No. 17-10467, 2019 WL 3451523, at *16-17 (D.N.J. July 31, 2019) (knowledge supported by confidential witnesses and defendants' statements indicating knowledge); *In re Enzymotec Sec. Litig.*, No. 14-5556, 2015 WL 8784065, at *18-19 (D.N.J. Dec. 15, 2015) (relation to "core business" is "not sufficient" by itself; scienter also bolstered by known regulatory and customer issues and suspicious trading).

"the impression of knowledge." Opp'n at 25–27, 32. This argument is absurd. Plaintiff merely points to *accurate* statements concerning: (i) discussions with FDA and status of the NDA submission/review, SAC ¶¶ 11, 95-96, 168-169, 188-189, 255 291-292; (ii) FDA's concerns identified in the 2021 CRL, *id.* ¶¶ 23, 191, 322; (iii) qualifications of the team, *id.* ¶¶ 12, 203, 304; and (iv) efforts to prepare for re-submission, *id.* ¶¶ 172, 187, 203, 304-306.[7]  None of these statements suggest Defendants received, but failed to disclose, material information regarding the NDA or possessed expertise allowing them to *predict* future FDA concerns. Defendants repeatedly disclosed risks relating to manufacturing.  Mot. at 8-9.

In the cases Plaintiff cites, Opp'n at 25-27, the defendants were alleged to have held themselves out as having "first-hand knowledge" of *specific* data that directly contradicted public statements.  *Supra* § I.B.1 (distinguishing *SEB*, and *PTC Therapeutics*); *Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer L.P.*, 532 F. Supp. 3d 189, 231 (E.D. Pa. 2021) (defendant "held himself out" as knowledgeable about project, but misrepresented project submissions to government); *Hall v. Johnson & Johnson*, No. 18-1833, 2019 WL 7207491, at

---

[7] Plaintiff claims that Armstrong and Todisco's experience in the industry "bolsters scienter."  Opp'n at 31–32.  But the sole case he cites, *McDermid v. Inovio Pharms.*, Inc., 520 F. Supp. 3d 652, 657-58 (E.D. Pa. 2021), merely rejected defendant's claim that he believed "constructed" and "designed" were synonymous terms given his pharmaceutical experience.  Here, there is no allegation Defendants were misusing industry terms or that their experience "bolsters scienter."

*22-24 (D.N.J. Dec. 27, 2019) (scienter alleged for defendants who led projects, possessed internal documents, or made internal statements contradicting public statements; no scienter where failed to allege defendant possessed **specific** information); *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229, at *22 (D.N.J. July 27, 2018) (scienter inferred from particularized allegations from multiple former employee witnesses with firsthand knowledge).[8]    The SAC contains no particularized allegations that show Defendants claimed expertise or responded to questions while in possession of contradictory information regarding the CMO.  Mot. at 5-12; §§ I.B.ii-I.B.v.[9]

> ### C.    There Are Substantial Competing Inferences Against Scienter.

The inference Plaintiff seeks to draw—that Defendants knowingly deceived investors about risks and prospect of approval and "gambled" that FDA would overlook such risks—is implausible without specific allegations, from confidential witnesses or contemporaneous documents, demonstrating that FDA actually **notified** Defendants of potential issues with the CMO pre-CRL.  Mot. at 6-12; §§

---

[8] *See also Utesch v. Lannett Co., Inc.*, 385 F. Supp. 3d 408, 422-23 (E.D. Pa. 2019) (made statement evincing certitude while in possession of **specific** contrary facts); *Avaya*, 564 F.3d at 270 (CFO denied pricing pressure in contradiction to confidential witnesses' assertions of widespread discounting).

[9] Contrary to Plaintiff's suggestion, the Motion thoroughly addresses this argument—the SAC fails to identify any contrary information, or "findings" regarding the CMO, even existed. Mot. at 16.  In *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 274 (3d Cir. 2007), plaintiff failed to raise a **claim** in complaint or brief.  *See* Opp'n at 27.

I.B.iii-I.B.v.  Unlike here, each of Plaintiff's cases, Opp'n at 17-18, included **specific** factual allegations of **known** deficiencies in NDAs.[10]  The more plausible inference is that Defendants worked in good faith to secure approval, accurately updated investors regarding FDA communications, and were surprised by the issues identified in the CRLs.  Mot. at 24-25.  Plaintiff fails to allege scienter.

## II.  PLAINTIFF FAILS TO ADEQUATELY ALLEGE A MATERIAL MISSTATEMENT OR OMISSION UNDER SECTIONS 10(b) OR 11.

Plaintiff requests a "relaxed" particularity requirement, Opp'n at 12, but: (i) he fails to allege any information within Defendants' control—the CRLs involved issues at CMO and API Supplier; and (ii) "even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir 1997).

### A.    Misrepresentation Regarding the Manufacturing Facilities.

Plaintiff argues that August 2019 statements regarding Defendants' "understanding and experience" led investors to believe purported "distortions" during the Class Period.  Opp'n at 14 (SAC ¶ 165).  But Plaintiff does not allege

---

[10] *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 323–24, 333 (E.D. Pa. 2020) (specific knowledge of FDA's disagreements that were later revealed); *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 346, 348–49 (E.D. Pa. 2014) (identifying concealed FDA statements establishing defendants misled investors about FDA feedback); *In re Viropharma, Inc. Sec. Litig.*, No. 02-1627, 2003 WL 1824914, at *9 (E.D. Pa. Apr. 7, 2003) (access to specific documents that made public statements misleading).

that those pre-Class Period[11] statements—regarding Neutrolin, focus on manufacturing, and success with previous NDAs—were false. *Id.* at 13.[12] Turning to purported "distortions," Plaintiff quotes certain statements and then asserts he has alleged "facts" establishing Defendants' knowledge, but he does not cite any paragraph in the SAC to support this assertion. Opp'n at 15. Nor could he; the SAC contains no *facts* establishing that statements regarding the team's experience or the validation process were false, or that Defendants possessed "material facts," which contradicted such statements. Mot. at 33-37; *supra* § I.B; p. 6 n.7.

Plaintiff appears to rest his claims on his unfounded assumption that issues discussed and data submitted regarding the CMC module must have actually related to manufacturing issues ultimately revealed in the CRLs. Opp'n at 7, 9. But Plaintiff fails to rebut Defendants' demonstration that (i) CMC broadly covers "chemistry, manufacturing, and controls," not only manufacturing; (ii) CMC meetings are routine and this was held at CorMedix's request; and (iii) the CMO did not attend the CMC meeting. Mot. at 16-18 (citing 21 C.F.R. § 314.50(d)(1)). And Plaintiff has not alleged facts, such as meeting minutes or witness statements from that meeting, establishing FDA notified Defendants of any "deficiencies"

---

[11] *In re Garrett Motion Inc. Sec. Litig.*, No. 20-7992, 2022 WL 976269, at *1 (S.D.N.Y. Mar. 31, 2022) ("A defendant is only liable for statements made during the class period") (collecting cases).

[12] Plaintiff selectively omits portions of the statements to falsely emphasize manufacturing when the actual statements are much broader in focus. Opp'n at 14.

later included in the CRLs.  Mot. at 16-18; *see, e.g.,* SAC ¶ 98 (unsupported conclusions that "*CMC program* had been considered deficient," Company "submitted additional data" to resolve unidentified deficiencies, and *CMC module* "reflected" such deficiencies).[13]  Adding to the implausibility of his argument, the issues identified in the CRLs arose from (i) data submitted **by the CMO**—not by CorMedix in the NDA, and (ii) on-site inspections of CMO and API Supplier. Mot. at 16 (SAC ¶¶ 187-188, 298, 360).  That FDA issued CRLs does not make any of the statements false when made.

Plaintiff's attempts to mischaracterize Defendants' statements should be rejected. He argues that a CorMedix officer described the initial CRL as posing "minimal hurdles that could be quickly and easily resolved." Opp'n at 14-15 (citing SAC ¶¶ 187-91). But the officer described the "extensive discussions with the CMO, with the goal of better understanding all of the information submitted to the FDA and the deficiencies." SAC ¶ 187; *id.* ¶ 304; Mot. at 16 (primary information sought in 2021 CRL was from the CMO). Similarly, Plaintiff points to statements expressing Defendants' belief that the issues relating to the first CRL were resolved.   Opp'n at 15 (citing SAC ¶¶ 345-47).   Not only does he mischaracterize the statements by omitting clear indication that this was merely

---

[13] Contrary to Plaintiff's suggestion regarding a separate submission, SAC ¶ 98, following the CMC meeting, CorMedix disclosed FDA "indicated data that will need to be available *in the NDA*." Ex. 15 at 5 (emphasis added).

Defendants' **belief**,[14] he fails to allege that such opinions were not reasonably held. Mot. at 30. Indeed, Defendants warned that FDA inspections could reveal new issues, which is precisely what occurred. *Id.* at 11-12, 30-31, 36-37. Plaintiff cannot explain how Defendants purportedly knew of such issues before FDA conducted those inspections. *Supra* § I.B.

### B. Plaintiff Fails to Allege Any Actionable Statements About the Timing or Likelihood of FDA Approval.

Plaintiff contends Defendants' forward-looking statements that the NDA approval process was "on track,"[15] or discussing the timeline for potential approval, were misleading because CorMedix allegedly withheld information about the completeness of the NDA, the CMO's capabilities, and issues which allegedly impeded the timeline. Opp'n at 16–18 (SAC ¶¶ 96, 227, 249, 252, 255). Plaintiff fails to allege facts suggesting Defendants did not accurately describe communications with FDA. *Id.* (had not been informed of any "review issues" or "delays," and were "continuing to work" with FDA). Nor does he specify information Defendants purportedly knew and withheld—let alone that such facts

---

[14] *Compare* SAC ¶¶ 345-47 *with* Exs. 17, 24 and 11; Mot. at 30-31.

[15] Statements to being "on track" concerned the timing of submission and a potential decision, and in no way guaranteed approval. Opp'n at 16-17. Plaintiff alleges Defendants told investors FDA was "inclined to approve" the DefenCath NDA, *id.* at 18, but CorMedix said no such thing. CorMedix accurately revealed FDA was "supportive" of manufacturing processes and that FDA meetings were "very positive." *Id.* at 18-19; SAC ¶¶ 96, 227, 249, 252, 255.

11

even existed pre-CRL.  Mot. at 31-33; *supra* § I.B.[16]  And while Plaintiff boldly states that as of July 2020, "DefenCath NDA already had numerous review issues," Opp'n at 7, he does not allege particularized facts to support such assertion.[17]

### C.    Safe Harbor Protects Defendants' Forward-Looking Statements.

The safe harbor immunizes Defendants' forward-looking statements as they were "accompanied by meaningful cautionary language," or not made with actual knowledge.  Mot. at 23–28 (citing *Williams v. Globus Med., Inc.*, 869 F.3d 235, 245-46 (3d Cir. 2017)).  Plaintiff disputes that the cautionary language were meaningful, Opp'n at 21-23, but the disclosures themselves—which the Court may review on a motion to dismiss (Mot. at 4, n.3)—reveal warnings that approval depended on third parties like the CMO, and that approval could be delayed or never occur due to ***manufacturing*** issues.  Mot. at 8-9, 27-28.

Faced with CorMedix's on-point cautionary language, Plaintiff argues that the disclosures were ineffective, and themselves false and misleading, because the

---

[16] Thus, Plaintiff's cases are inapposite. Opp'n at 17-18, *Avaya*, 564 F.3d at 261. *Supra* § I.B.1; pp. 3 & 8 n.10 (distinguishing *SEB*, *Frater*); *Skiadas v. Acer Therapeutics Inc.*, No. 1:19-cv-6137, 2020 WL 4208442, at *8 (S.D.N.Y. July 21, 2020) (defendants had access to information contradicting statement that FDA had agreed to approve); *In re Celegene Corp. Sec. Litig.*, No. 18-4772, 2019 WL 6909463, at *8 (D.N.J. Dec. 19, 2019) (former employee stated executives "knew about" undisclosed trial results).

[17] Defendants' optimism about the approval prospects for the DefenCath NDA are non-actionable puffery.  Mot. at 28-31.  No guarantee of success is identified in the SAC, regardless of Plaintiff's attempts to "spin" the statements.  Opp'n at 22, n.3.

risks "had already occurred" or were "occurring."  Opp'n at 22.  But as set forth above, *supra* § I.B., Plaintiff fails to allege particularized facts supporting his conclusion, and instead impermissibly relies on fraud-by-hindsight.  Thus, *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-1990, 2005 WL 2007004, at *52 (D.N.J. Aug. 17, 2005); *see* Opp'n at 22–24, is inapposite. Plaintiff fails to allege facts showing CorMedix knew "with near certainty" of undisclosed material risks.

## III.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE LOSS CAUSATION UNDER SECTION 10(b).

Plaintiff fails to show the "materialization of an ***undisclosed*** risk caused the alleged loss." Opp'n at 34–35 (citing *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 429 (3d Cir. 2007) (emphasis added); Mot. at 38-39.  It is undisputed that the stock price ***increased*** following disclosure of the alleged undisclosed risk—the specific concerns in the 2021 CRL—and thus did not cause the purported loss. Mot. at 38-39.  Plaintiff responds by arguing "Defendants continued to mislead investors and downplay the gravity of the First CRL."  Opp'n at 35.  But Plaintiff fails to allege that following the CRLs, investors were *unaware* of the risk that *manufacturing* issues may delay the NDA's approval. *McCabe*, 494 F.3d at 426 (plaintiff must show "defendant misrepresented or omitted the very facts" that caused the "economic loss").  Plaintiff fails to plead loss causation.[18]

---

[18] Defendants do not "reinterpret[] the September 7, 2021 disclosure" or raise a "factual dispute," Opp'n at 35—the plain language discloses that the issues at the

## IV.    PLAINTIFF FAILS TO PLEAD A SECTION 11 CLAIM.

The Opposition fails to even mention standing under Section 11, Opp'n at 36-38, let alone rebut Defendants' demonstration that alleging "[m]erely purchasing stock 'traceable to the Offering Documents' is insufficient to plead standing in the secondary offering context." Mot. at 39 n.29; *Alitsource S.A.R.L. v. Szumanski*, No. 21-03293, 2022 WL 909872, at *12 (D.N.J. Mar. 29, 2022) (issue raised by movant, but "uncontested in the opposition," is "waived"). This pleading defect alone, which Plaintiff has waived, dooms his Section 11 claim.

Even under Rule 8(a), Plaintiff must (but fails to) allege "enough facts to state a claim to relief that is plausible on its face.[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do"). In *Hoey v. Insmed, Inc.*, No. 16-4323, 2018 WL 902266, at *25, n.22 (D.N.J. Feb. 15, 2018), the court dismissed a § 11 claim as deficient, under both Rule 8 and 9(b), where plaintiff failed to

---

CMO are "unrelated to DefenCath manufacturing activities," Ex. 9 at 2. And Plaintiff ignores that the announcement regarding receipt of the 2022 CRL specifically stated the "refiled NDA could not be approved until satisfactory resolution of deficiencies identified during a pre-approval inspection at the CMO and during an inspection for an unrelated active pharmaceutical ingredient at the manufacturing facility for the heparin supplier for DefenCath." Ex. 11; Mot. at 39. Plaintiff fails to allege facts to contradict these statements.

[19] Plaintiff concedes that a Securities Act claim sounding in fraud is subject to Rule 9(b), Opp'n at 36-37, but tries to superficially separate allegations supporting his Exchange Act and Securities Act claims. *Id.* at 37; Mot. at 39, n.30; SAC ¶¶ 65, 68 ("knew" or "should have known"). The § 11 claim fails under either standard.

14

adequately allege FDA expressed concerns to defendants prior to the offering, that ultimately resulted in non-approval. *See Zucker v. Quasha*, 891 F. Supp. 1010, 1017 (D.N.J. 1995) (no liability under Section 11 for "omission of material information which was unknown to, and not reasonably discoverable by, the defendants"), *aff'd*, 82 F.3d 408 (3d Cir. 1996).

Plaintiff fails to identify any actionable misstatement or omission in the Offering Documents. Mot. at 39-41; § II. Plaintiff's arguments regarding Items 105 and 303 rely on his unsupported conclusion that the FDA had communicated "serious concerns" regarding the "CMC program" and "data" to Defendants, which constituted a "heightened" risk of non-approval under Item 105, and a "known uncertaint[y]" under Item 303. Opp'n at 38-40. As in *Hoey*, Plaintiff alleges no facts showing that prior to the Offering, FDA communicated concerns which ultimately resulted in the CRLs. The Section 11 claim fails under Rule 8.[20]

## **CONCLUSION**

For the foregoing reasons, the CorMedix Defendants respectfully request that the Court dismiss the Second Amended Complaint with prejudice.

---

[20] Plaintiff's claims for "scheme-based liability" and control person liability fail because the only allegedly deceptive acts Plaintiff challenges are the same as his § 10(b) claim, and he does not allege a predicate violation. Mot. at 37; 41 n.34.

Dated: February 6, 2023

DECHERT LLP


*/s/ David A. Kotler*

David A. Kotler
Steven P. Pellechi (*pro hac vice*)
1095 Avenue of the Americas
Three Bryant Park
New York, New York 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
david.kotler@dechert.com
steven.pellechi@dechert.com


Joni S. Jacobsen (*pro hac vice*)
Angela M. Liu (*pro hac vice*)
35 West Wacker Drive, Suite 3400
Chicago, Illinois 60601
Tel.: (312) 646-5800
Fax: (312) 646-5858
joni.jacobsen@dechert.com
angela.liu@dechert.com

*Counsel for Defendants CorMedix Inc., Khoso Baluch, Robert Cook, Matthew David, Phoebe Mounts, John L. Armstrong, Janet Dillione, Myron Kaplan, Alan W. Dunton, Steven Lefkowitz, Paulo F. Costa, Greg Duncan, and Joseph Todisco*

16

## Certificate of Service

I hereby certify that, on this date, I caused a true and complete copy of the foregoing Reply Memorandum in Further Support of Defendants' Motion to Dismiss the Second Consolidated Amended Class Action Complaint to be electronically filed with the United States District Court for the District of New Jersey, and to be served upon all parties by means of the ECF filing system.  I further certify that the foregoing statement made by me is true.  I am aware that if the foregoing statement made by me is willfully false, I am subject to punishment.

Dated: February 6, 2023

_/s/ David A. Kotler_
David A. Kotler