**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE CORMEDIX INC. SECURITIES LITIGATION | Civil Action No. 2:21-cv-14020-JXN-CLW |
|  | CLASS ACTION |
|  | Motion Day: September 3, 2024 |
| This Document Relates To: ALL ACTIONS | ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE THIRD AMENDED**
**CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.      PLAINTIFF FAILS TO ADEQUATELY ALLEGE SCIENTER .....................................2

II.     PLAINTIFF FAILS TO ADEQUATELY SUPPORT FALSITY .......................................6

III.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE LOSS CAUSATION......................11

IV.     THE COURT SHOULD DISMISS THE TAC WITH PREJUDICE...............................12

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer L.P.*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) ................................................................................5

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013)................................................................................11

*In re Bristol-Myers Squibb Sec. Litig.*,
2005 WL 2007004 (D.N.J. Aug. 17, 2005) ...................................................................10

*In re Campbell Soup Co. Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) ..................................................................................4

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
2019 WL 3451523 (D.N.J. July 31, 2019).......................................................................4

*In re Celgene Corp. Sec. Litig.*,
2019 WL 6909463 (D.N.J. Dec. 19, 2019) .......................................................................7

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
2024 WL 3219616 (D.N.J. June 28, 2024) ...........................................................6, 9, 11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................................11

*In re: Enzymotec Sec. Litig.*,
2015 WL 8784065 (D.N.J. Dec. 15, 2015)..................................................................4, 11

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335 (E.D. Pa. 2014) ...............................................................................7

*In re Genta, Inc., Sec. Litig.*,
2005 WL 2416970 (D.N.J. Sept. 30, 2005) ......................................................................4

*Gorlamari v. Verrica Pharm., Inc.*,
2024 WL 150341 (E.D. Pa. Jan. 11, 2024) ................................................................7, 10

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019) .......................................................................5

*In re Honeywell Int'l Inc. Sec. Litig.*,
182 F. Supp. 2d 414 (D.N.J. 2002) ..................................................................................5

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
2021 WL 4191467 (D.N.J. Sept. 15, 2021) ..................................................................4, 5

*Institutional Inv. Grp. v. Avaya*,
     564 F.3d 242 (3d Cir. 2009)..............................................................................................2

*In re Intelligroup Sec. Litig.*,
     527 F. Supp. 2d 262 (D.N.J. 2007) ................................................................................11

*Kline v. First Western Gov't Sec., Inc.*,
     24 F.3d 480 (3d Cir. 1994)................................................................................................9

*McDermid v. Inovio Pharma. Inc.*,
     520 F. Supp. 3d 652 (E.D. Pa. 2021) ...............................................................................5

*In re PTC Therapeutics, Inc. Sec. Litig.*,
     2017 WL 3705801 (D.N.J. Aug. 28, 2017) ...................................................................4, 5

*Roofer's Pension Fund v. Papa*,
     2018 WL 3601229 (D.N.J. July 27, 2018).........................................................................5

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
     351 F. Supp. 3d 874 (E.D. Pa. 2018) .............................................................................4, 9

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
     348 F. Supp. 3d 313 (S.D.N.Y. 2018)..............................................................................10

*Skiadas v. Acer Therapeutics*,
     2020 WL 4208442 (S.D.N.Y. July 21, 2020) ....................................................................7

*Strougo v. Mallinckrodt Public Ltd. Co.*,
     2022 WL 17740482 (D.N.J. Dec. 16, 2022) ..................................................................7, 11

*In re Synergy Pharms., Inc. Sec. Litig.*,
     2021 WL 4480625 (E.D.N.Y. Sept. 30, 2021) ...................................................................5

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*,
     2018 WL 395730 (D.N.J. Jan 12, 2018) ............................................................................4

*Tomaszewski v. Trevena, Inc.*,
     482 F. Supp. 3d 317 (E.D. Pa. 2020) ................................................................................7

*In re Toronto-Dominion Bank Sec. Litig.*,
     2018 WL 6381882 (D.N.J. Dec. 6, 2018)...........................................................................6

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
     2017 WL 1658822 (D.N.J. Apr. 28, 2017) .....................................................................2, 4

*In re Westinghouse Sec. Litig.*,
     90 F.3d 696 (3d Cir. 1996)..............................................................................................11

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017)....................................................................................................11

In the Opposition, Plaintiff presents this as a case where the Defendants proceeded with a deficient NDA knowing full well FDA was going to reject it.[1]  Nothing could be further from the truth.  Fatally, Plaintiff pleads no particularized facts—from witnesses, internal documents, or FDA materials—supporting his theory.  Furthermore, Plaintiff confuses deficiencies identified by FDA at the CMO, which is a separate entity licensed by FDA that services multiple drug sponsors, with deficiencies in the NDA submitted by CorMedix.  This attempt to plead "fraud by hindsight" is not without irony given that FDA ultimately *approved* the NDA with the same CMO in question.

First, Plaintiff fails to plead a "strong inference" of scienter.  Plaintiff erroneously relies on (i) an FDA "readiness audit" of the CMO that predated the NDA submission ***by two years***, (ii) sweeping but unwarranted conclusions about what Defendants must have known based on their knowledge, positions, and experience, and (iii) the "core operations" doctrine, which neither applies on its terms nor fits the facts of this case, given that the CRLs arose from deficiencies at independent third parties, not CorMedix.  And Plaintiff's failure to plead a motive to defraud— such as stock sales—undermines any inference of scienter.  Whether considering Plaintiff's scienter allegations individually or in the aggregate, the nonculpable inference is much stronger.

Second, Plaintiff's theory of falsity is divorced from any well-pled facts.  The Opposition relies on statements Defendants never made—such as "ensur[ing] cGMP compliance at its CMO"—and then claims those statements were false because of "severe concerns" that FDA is not alleged to have ever raised or conveyed to Defendants and other mischaracterizations.  Moreover, Plaintiff fails to identify any undisclosed red flags, forward-looking statements which were not accompanied by meaningful cautionary language, or actionable opinion statements.

---

[1] Capitalized terms are defined in Defendants' opening brief ("Motion" or "MTD"), ECF 104-1.  Plaintiff's opposition brief (ECF 106) is referred to herein as "Opposition" or "Opp."

## I.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE SCIENTER

The Opposition, like the TAC, strikes out in trying to show a strong inference of scienter. Absent any individualized allegations[2] or motive to commit fraud,[3] the TAC fails to plead any facts to support scienter, then fails to fill in the gaps through the "core operations" doctrine:

*First*, Plaintiff fails to rebut that his allegations concerning the 2018 FDA readiness audit of ROVI should be subject to a "steep discount." MTD 12-15. Nothing in the Opposition changes that Plaintiff fails to plead details about what specifically the audit found, any relationship whatsoever to the CRLs, and what CorMedix did in response; instead, all that is pled is a (mischaracterized) opinion about ROVI's readiness for an FDA inspection two *years before* the FDA inspection as described by an unnamed employee who was not at CorMedix at the time of the audit and who is not alleged to have *read* the report. MTD 14. The Opposition only further undermines the reliability of these allegations. It claims that the TAC's "allegations about the 2018 audit are supported by statements from two former CorMedix employees . . ., one of whom

---

[2] Plaintiff's claim that he need not plead scienter on a defendant-by-defendant basis because he alleges statements that were "individually-made" is nonsensical. Opp. 26 n.10. For example, Plaintiff claims that Cook, who left CorMedix in January 2020, "expressly described the FDA's purported support for the NDA." *Id.* at 29. But the TAC fails to plead facts that, during Cook's employment, FDA *was not* supportive of the NDA. Indeed, Plaintiff acknowledges FDA did not require an "advisory committee" meeting for DefenCath later in 2020, which is a sign that it *was* supportive of the NDA. Opp. 7.

[3] Plaintiff's failure to plead motive—such as stock sales—undermines scienter. MTD 11. In fact, Defendants *bought* stock during the Class Period: it is not plausible that they defrauded themselves. *Id.* Furthermore, his case (Opp. 26 n.9), positing defendants may have been caught before they sold, involved facts not present. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822 (D.N.J. Apr. 28, 2017) (potential motive because of "unusual compensation" structure based on aggressive performance metrics backed by threat of termination that gave CEO opportunity to become billionaire). And Plaintiff's claim that CorMedix's "survival" depended on raising capital (Opp. 30 n.14) fails as a matter of law because it does not proffer a "concrete and personal benefit." *Institutional Inv. Grp. v. Avaya*, 564 F.3d 242, 278 (3d Cir. 2009).

2

drafted the 2018 audit report." Opp. 30. But this is contradicted by the TAC, which states FE1 was an *outside consultant*, not a CorMedix employee. ¶¶ 80-81. And Plaintiff claims that "[n]otably, Defendants take no issue with FE1's statements." Opp. 31 n.15. But that is because FE1—alleged to be the author of the report—says *nothing* about the audit and fails to corroborate FE2's allegations. ¶¶ 80-81. Hence, the FEs are not "mutually-corroborative." Opp. 31.

Plaintiff further claims "the CRLs and other publicly-available information cited in the Complaint lend credibility to the FE's statements." Opp. 31. However, Plaintiff cites *nothing* in support. That is because nothing in the TAC actually corroborates FE2's allegations. And while Plaintiff claims "that Defendants chose ROVI in 2017 is irrelevant" (*id.*), it is relevant because FE2 alleges Defendants chose ROVI after *2018* (¶¶ 79-84), further undercutting FE2's reliability. Importantly, Plaintiff fails to respond to Defendants' arguments that FE2's allegations are vague and conclusory, no one at CorMedix questioned ROVI's ability to pass inspection, and, as the audit only speaks to ROVI's readiness at one moment in time, FE2 does *not* claim that ROVI was not in a position to pass an FDA inspection in 2020 *when the NDA was submitted*. MTD 14-15. As a result, the allegations attributed to the FEs are insufficiently detailed, reliable, and corroborated.

***Second***, Plaintiff has nothing specific to point to—no internal documents, no CorMedix employees, no FDA warnings—to plead scienter. Plaintiff boldly declares that Defendants had access to facts contradicting their public statements. Opp. 30-33. However, that claim fails. Other than the 2018 ROVI audit, Plaintiff claims Defendants "had information regarding the first CRL," which they "concealed from the investing public." Opp. 30. However, his putative support—TAC ¶ 24—speaks to a conference call *after* the First CRL. It lends no support to the unsupported claim that Defendants knew facts about the First CRL prior to receiving it from FDA in February 2021 and concealed them. Likewise, Plaintiff asserts "the Individual Defendants' positions and

3

responsibilities gave them access to knowledge that contradicted their public statements about DefenCath's FDA approval and manufacturing." Opp. 32. But the cited Paragraphs either (1) describe how Defendants had "access to material information" without describing *what* that information is or "actual knowledge" of falsity without explaining why (¶¶ 294, 313); or (2) have nothing to do with the topic and may have been cited in error (¶¶ 316, 321, 323).[4]

*Third*, with nothing else, Plaintiff relies heavily on the "core operations" theory (Opp. 33-35), which is available only in the "rare instance" that the fraud is so central "a strong inference of scienter is inescapable." *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2021 WL 4191467, *19 (D.N.J. Sept. 15, 2021). He acknowledges that he must plead "some additional allegation of specific information conveyed to management and related to the fraud." Opp. 33. But that "specific information" is missing, which is unsurprising given that the CRLs related not to the operations of CorMedix, but to third parties. None of his cases[5] supports a core operations inference that Defendants knew about defects in the records submitted by ROVI before the first

---

[4] Hence, Plaintiff's cases are all distinguishable. *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 904-06 (E.D. Pa. 2018) (defendants learned specific clinical data at internal meetings "that contradicted" public statements); *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *16 (D.N.J. Aug. 28, 2017) (FDA notified defendants that proposed NDA was "facially insufficient"); *In re Genta, Inc. Sec. Litig.*, 2005 WL 2416970, at *1-2, *6-7 (D.N.J. Sept. 30, 2005) (defendant "personally involved" in trial design knew of results contradicting statements); *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (witnesses identified discussions with defendants about misconduct and defendants received contradictory data); *T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 395730, at *5-7 (D.N.J. Jan. 12, 2018) (scienter allegations included defendants' admission of, and emails regarding, improper revenue inflation and defendant lying to investigators).

[5] *Carmignac Gestion v. Perrigo Co.*, 2019 WL 3451523, at *16-17 (D.N.J. July 31, 2019) (knowledge of increased competition and pricing pressure supported by confidential witness allegations that company maintained records of competitors and new products, as well as defendants' statements indicating knowledge); *In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at *18-19 (D.N.J. Dec. 15, 2015) (relation to "core business" is "not sufficient"; scienter also bolstered by known regulatory and customer issues and suspicious trading).

CRL or that Defendants could predict FDA would issue a Form 483/Warning Letter to the API supplier on matters unrelated to DefenCath after the NDA was resubmitted. His argument that Defendants purported to be authoritative about the NDA adds nothing. Opp. 26.[6] All he points to are *accurate* statements about the NDA and FDA review process. Opp. 26. None are indicative of Defendants having first-hand knowledge of what *specifically* contradicted their public statements, as his own cases require.[7] His attempt to infer scienter from Defendants' positions[8] or experience[9] fails for the same reasons. Opp. 32-33, 35-36. And Plaintiff's claim that Defendants were "touting" their success in other markets (Opp. 2) ignores CorMedix's disclosure that it was retaining a new CMO in the U.S. market that must be registered with and inspected by FDA. Ex. 1 at 6. Notably he abandons any attempt to plead scienter through the Form 483s. *See* MTD 15.

---

[6] Plaintiff suggests that making statements "implicat[ing] FDA data" implies scienter, citing *PTC Therapeutics*. Opp. 28 n.11. This case does not involve clinical trial data like *PTC*, but in any event, Plaintiff mischaracterizes *PTC*, where the court found a strong inference of scienter not based on the contents of the challenged statements, but because defendants "*knew*" of no less than four adverse facts that contradicted their statements. 2017 WL 3705801, at *16 (emphasis added).

[7] *E.g.*, *Allegheny Cnty. Emps. Ret. Sys. v. Energy Transfer L.P.*, 532 F. Supp. 3d 189, 231 (E.D. Pa. 2021) (defendant "held himself out" as knowledgeable about project, but misrepresented project submissions to government); *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *22-24 (D.N.J. Dec. 27, 2019) (scienter alleged for defendants who led projects, possessed internal documents, or made internal contradictory statements; no scienter alleged where failed to allege defendant possessed *specific* information); *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *22 (D.N.J. July 27, 2018) (scienter inferred from allegations by multiple former employees).

[8] *See Industriens*, 2021 WL 4191467, *19 (Opp. 32-33) (court *granted* dismissal, finding defendants' positions an insufficient basis for scienter); *In re Honeywell Int'l Inc. Sec. Litig.*, 182 F. Supp. 2d 414 (D.N.J. 2002) (Opp. 33) (allegations of scienter bolstered by suspiciously timed insider sales and because alleged fraud related to major corporate acquisition).

[9] Plaintiff's case, *McDermid v. Inovio Pharma. Inc.*, 520 F. Supp. 3d 652, 665 (E.D. Pa. 2021), merely rejected defendant's claim that he believed that saying the company "constructed" and "designed" a Covid vaccine in three hours were synonymous given his industry experience. While *In re Synergy Pharms., Inc. Sec. Litig.*, 2021 WL 4480625 (E.D.N.Y. Sept. 30, 2021) was overturned on appeal, Opp. 35 n.19, the Second Circuit's opinion did not disturb the trial court's holding that "generalized allegations about the Individual Defendants' educational background and extensive experience in the relevant industry do not raise an inference of scienter." MTD 16.

Plaintiff's heavy reliance on *City of Warwick Ret. Sys. v. Catalent, Inc.*, 2024 WL 3219616 (D.N.J. June 28, 2024), backfires.  Opp. 26-27, 33, 40.  Plaintiff presents *Catalent* as a similar case where defendants "misrepresented quality control weaknesses at an outsourced drug manufacturer."  Opp. 27.  But Plaintiff fails to explain that the Court *dismissed* the quality control statements mirroring the ones made here as puffery, inactionable opinions, and/or statements that aligned with what defendants knew at the time.  *Catalent*, 2024 WL 3219616, at \*5-9.[10]

***Finally***, taking the allegations of the TAC as a whole, the much more compelling inference is one of a disappointing delay in approval rather than a fraud.  MTD 17-18.  Plaintiff's claim that Defendants "gambled" with a facially deficient NDA (Opp. 38) is both unsupported and ignores that the NDA *was approved* with ROVI.  Furthermore, the CRLs were caused by setbacks at independent third parties that CorMedix did *not* control for reasons having little to do with DefenCath.  The conclusion that CorMedix attempted to work through these issues in good faith and provided regular updates to investors is supported by the TAC (¶¶ 236, 242, 261); the conclusion that CorMedix lied to investors about a facially deficient NDA is not.

## II.    PLAINTIFF FAILS TO ADEQUATELY SUPPORT FALSITY

As an initial matter, the Opposition does not dispute that many of the challenged statements were true.  *See* MTD App. A (¶¶ 183, 201, 203, 206, 209); App. B. (¶¶ 223, 224, 227, 230, 239, 249, 252-53, 257, 258-59, 270-72).  As to the remaining challenged statements:

**No undisclosed red flags**:  Plaintiff's theory of falsity rests in large part on "severe manufacturing concerns" that he claims FDA "raised" to Defendants.  Opp. 8, 16.  The problem is that the TAC contains no factual allegations whatsoever to support this conclusory claim, and the

---

[10] Weaker still is Plaintiff's argument that scienter is supported by "Baluch's and David's SOX certifications."  Opp. 36.  His case, *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at \*19 (D.N.J. Dec. 6, 2018), questions "whether this adds much more to the scienter analysis."

Opposition identifies none.  Plaintiff relies *exclusively* on the fact that, nine months before the NDA was submitted, FDA "request[ed] some additional data."  *See* Opp. 16; ¶ 184.  That is not nearly sufficient to constitute a red flag in this context, *see* MTD 20 n.15, and Plaintiff does not argue otherwise.  Thus, this case bears no resemblance to the cases cited in the Opposition where the complaint alleged actual undisclosed "concerns" that FDA had conveyed to defendants.[11]

**No statements ensuring FDA approval or CMO compliance**:  Plaintiff also distorts a number of statements to fit its narrative that Defendants reassured investors that the NDA would be approved without delay.  Plaintiff claims that Defendants "informed investors that the FDA was inclined to approve DefenCath," Opp. 19, but he cites no statements where Defendants actually did so.  One of his examples is a June 15, 2022 statement by Mr. Todisco answering "yes" to the question "has the company addressed all the questions appropriately?"  Opp. 19.  But Mr. Todisco did not say that FDA would approve the NDA; to the contrary, he warned on that same investor conference that the upcoming FDA inspection of the CMO would likely yield some "observations that have to be responded to," ¶ 279, which is exactly what happened in the Second CRL, ¶ 281.[12]

---

[11] *See, e.g.*, *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 341-44, 346 (E.D. Pa. 2014) (Opp. 19) (FDA said it would be "unusual" for data submitted with NDA "to provide sufficient evidence of approval"); *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 322-23, 330-31 (E.D. Pa. 2020) (Opp. 18) (FDA expressed "serious disagreement" with proposed Phase 3 trials); *In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463, at *17 (D.N.J. Dec. 19, 2019) (Opp. 18-19) (FDA guidance warned that NDA would face "significant hurdles" if studies found metabolites, and studies found metabolites); *Skiadas v. Acer Therapeutics*, 2020 WL 4208442, at *8 (S.D.N.Y. July 21, 2020) (Opp. 20) (FDA feedback contradicted defendant's public statement); *see also Strougo v. Mallinckrodt Public Ltd. Co.*, 2022 WL 17740482, at *3-4, *10-11 (D.N.J. Dec. 16, 2022) (CMS told defendants that defendants had massively underpaid Medicare rebates).

[12] Accordingly, *Gorlamari v. Verrica Pharm., Inc.*, 2024 WL 150341, at *12 (E.D. Pa. Jan. 11, 2024) (Opp. 20) is inapposite because the defendant answered "yes" to the question "we should feel pretty confident that we should see an approval here[?]"  Plaintiff also claims that, during the June 2022 conference, Mr. Todisco conveyed that "the only risk in the [upcoming] FDA inspection of [the CMO] were 'observations that didn't involve'" DefenCath.  Opp. 15.  Not so.  Mr. Todisco never cabined the potential risk to observations not involving DefenCath.  He warned that "there

The other statements cited by Plaintiff that supposedly predicted FDA approval merely conveyed that "FDA was supportive of the core manufacturing processes" and that, pre-CRL, FDA "had not identified any potential review issues," neither of which was allegedly false. Opp. 19. Nor do statements such as "we look forward to continuing to work together [with FDA] expeditiously to complete the review of the" NDA, CorMedix "has not been informed of any delays by the FDA in the review of the NDA," and "we are doing right now all the typical prelaunch planning" amount to statements "assuring investors that the . . . NDA was on track for FDA approval." Opp. 17.

Likewise, Plaintiff says that Defendants made "direct misstatements about the then-current adequacy of the" CMO without citing any such statements. Opp. 14-16. Strangely, Plaintiff's principal example is a statement *before* the Class Period not alleged to be false. Opp. 4-5, 14-15.[13] Plaintiff also cites a statement from Mr. Armstrong in November 2019 that "the drug product manufacturer . . . is in place and processes have been established and appropriate validation testing completed to enable manufacture of launch quantities." Opp. 15; ¶ 185. At most, this statement affirmed that the CMO could manufacture sufficient quantities of DefenCath; it is not a guarantee of regulatory/cGMP compliance at the CMO, especially alongside CorMedix's repeated warnings that the CMO "may not be able to comply with the applicable FDA regulatory requirements." ¶ 191. Moreover, that CorMedix repeated almost the same statement in an April 2021 presentation that also disclosed receipt of the First CRL reinforces that Mr. Armstrong was speaking about ROVI's capacity to manufacture launch quantities. Opp. 15; ¶ 240; MTD Ex. L at 18.[14]

---

will be observations that have to be responded to" and then later explained "to the extent that there are any observations" not involving DefenCath, CorMedix may not have full visibility. ¶ 279.

[13] Mr. Todisco's June 2022 reference to the CMO as a "highly reputable European manufacturer," Opp. 15, is not alleged to have been false in the TAC. *See* ¶ 279; TAC p. 75 n.104.

[14] Nor did Mr. Todisco's statement that CorMedix was "continuing initiatives to dual source . . . active ingredients in order to de-risk potential supply chain disruptions as well as potential

**Forward-looking statements**:  Plaintiff does not contest that the challenged statements about the NDA being "on schedule" and "on track" were forward-looking.  MTD App. B.  Instead, he argues that the "cautionary language" failed to disclose "then-identified manufacturing issues."  Opp. 17-18, 22-24.  However, Plaintiff does not say what these "identified manufacturing issues" were, who identified them, or when.  He relies on:  (1) after July 9, 2020, "CorMedix kept from the FDA that its CMO added a new production line and equipment" (while identifying no authority requiring disclosure of such) and (2) at some point, "CorMedix added another heparin supplier without disclosing the new supplier to the FDA or validating identical vial size and fill quantity."  Opp. 18 n.3.  However, these omissions never "materialized" (Opp. 18, n.3) in the form of delayed NDA approval.[15]  Even if the TAC did allege that these omissions jeopardized the NDA, Plaintiff fails to show how that falsified any of the "on track" statements made after the purported omissions (*i.e.*, after July 2020), none of which spoke to the timeline for FDA approval, but instead were about the timeline for addressing the First CRL and resubmitting the NDA.  MTD App. C; ¶¶ 223, 243, 256-58.  As for the challenged forward-looking statements prior to July 2020 (Opp. 17; ¶¶ 179, 187, 194, 196), Plaintiff does not cite any "then-identified manufacturing issues" at all.

---

government regulatory actions at any key supplier" implicate alleged "CMC deficiencies."  *See* Opp. 21.  By contrast, in Plaintiff's cases, defendants "put in play" a particular subject matter but failed to disclose related material facts.  In *Kline v. First Western*, 24 F.3d 480, 490-91 (3d Cir. 1994), the defendant spoke about benefits of a tax shelter program, but failed to disclose related government investigations.  In *Endo*, 351 F. Supp. 3d at 907, defendants spoke about an opioid's intranasal anti-abuse properties, but failed to disclose that studies had indicated increased intravenous abuse.  And in *Catalent*, defendants spoke about demand in Brussels, but failed to disclose that Brussels had experienced "zero commercial revenue."  2024 WL 3219616, at *8.

[15] With respect to (1), FDA cited the need to understand the "impact" of the new facility, *not* any failure to disclose the facility.  ¶ 223.  For (2), the omission of additional suppliers from the NDA was "*not* [an] approvability issue[]."  TAC Ex. 2 at p.5 (emphasis added).

**Opinion statements and puffery**:  Nor does Plaintiff contest that many of the challenged statements were opinions.  MTD App. D.  He argues instead that Defendants failed to disclose conflicting facts.  Opp. 24 n.8 (citing *Omnicare*).  However, he never identifies such facts.  Plaintiff points to February and March 2022 opinion statements by Ms. Mounts that "we believe we and the [CMO] have adequately addressed the concerns the Agency identified in the [First] CRL and PAAL."  Opp. 15; MTD 27.  But he identifies no allegations that CorMedix and the CMO did *not* adequately address concerns identified in the First CRL; to wit, the TAC does not allege that any of the issues identified in the First CRL appeared in the Second CRL.[16]

Plaintiff does not meaningfully refute that statements such as "we remain confident that we have the right team and appropriate resources in place to resolve the [CMO] deficiencies" were inactionable puffery.  MTD 26-27 & App. D.  Plaintiff attempts to analogize to a statement from another case describing "very impressive results from a large group of patients" and that "the data indicate [the drug] may be the best choice for doctors"—which the court held was false because it "refers to the results from the [drug] trials—a matter of historical fact."  Opp. 24.[17]  Here, though, none of the "right team" statements characterized historical facts, much less verifiable data like clinical trial results.  *See* ¶¶ 185, 202, 210, 225, 232, 250-51, 257.

**Risk disclosures**:  Finally, Plaintiff claims CorMedix defrauded investors when it warned in March 2020 that its CMO "may not be able to comply with the applicable FDA regulatory requirements, which . . . could prevent [it] from ultimately receiving product market approval."

---

[16] Contrast with *Verrica* (Opp. 20), where the defendant "essentially announced that quality problems at [the CMO] had been 'successfully resolved,'" but then those "same quality problems" reappeared months later in a Form 483.  2024 WL 150341, at *11.  *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 324-25 (S.D.N.Y. 2018) (Opp. 23 n.6) also does not help Plaintiff.  In that case, defendants told investors that an opioid drug's NDA included certain "abuse-deterrent studies," when in fact the NDA did not.  *Id.* at 323-25.

[17] *In re Bristol-Myers Squibb Sec. Litig.*, 2005 WL 2007004, at *25 (D.N.J. Aug. 17, 2005).

Opp. 20-22.[18]  *Williams v. Globus Med., Inc.*, 869 F.3d 235 (3d Cir. 2017) controls.  There, defendants warned that "'if any of our independent distributors were to cease to do business with us, our sales could be adversely affected.'"  *Id.* at 238.  Although plaintiff alleged that a distributor had been terminated, plaintiff did not allege that sales had been adversely affected, which the court held was dispositive.  *Id.* at 241-43.  Here, Plaintiff does not allege that by March 2020, the risks "actually warned of" (*Id.* at 242)—delays in product approval or other adverse business effects at CorMedix—had materialized.[19]  Thus, "[i]f anything, [CorMedix] [wa]s being transparent with investors through" its risk warnings.  *Catalent*, 2024 WL 3219616, at *9.

## III.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE LOSS CAUSATION

Plaintiff fails to plead loss causation because no "fraud" was ever revealed to the market.  MTD 28-29.[20]  In response, Plaintiff invokes the "materialization of risk" theory of loss causation.  Opp. 39.  But "[u]nder the 'materialization of risk' test, 'a plaintiff must show that the defendant exposed him to an undisclosed risk that subsequently materialized and that the materialization of the risk resulted in the complaint of loss.'"  *Bartesch v. Cook*, 941 F. Supp. 2d 501, 512 (D. Del. 2013).  As demonstrated, all Plaintiff has pled is the materialization of risks inherent in the FDA approval process, which were *disclosed*.  MTD 29.  Hence, the TAC cannot rely on the theory.[21]

---

[18] As for the April 2020 statement warning about "possible delays at FDA due to the coronavirus pandemic," Opp. 21, the TAC does not allege this statement was false.  ¶ 194; TAC p. 75 n.104.

[19] The other cases cited by Plaintiff concern whether cautionary language was sufficiently meaningful in the context of forward-looking statements, not whether risk warnings were themselves misleading.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996); *Enzymotec*, 2015 WL 8784065, at *15; *Strougo*, 2022 WL 17740482, at *11.

[20] Plaintiff incorrectly asserts (Opp. 38) that "the Third Circuit instructed that loss causation inquiries are generally inappropriate on a motion to dismiss."  *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) (dismissing action, in part, for plaintiff's failure to sufficiently plead element of loss causation); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262 (D.N.J. 2007) (same); *Bartesch v. Cook*, 941 F. Supp. 2d 501, 512-13 (D. Del. 2013) (same).

[21] Plaintiff's scheme liability claim also fails.  Plaintiff concedes that the TAC is based exclusively on false statements and omissions.  Opp. 32 n.16.  Whether "dissemination" of false statements

## IV.     THE COURT SHOULD DISMISS THE TAC WITH PREJUDICE

Through the Opposition, Plaintiff seeks leave to amend.  Opp. 40.  Again, Plaintiff did not do so by formal motion; Defendants respectfully submit that the second time around, this should not be excused.  ECF No. 91 at 2.  Regardless, Plaintiff presents no substantive response to Defendants' arguments that dismissal should be with prejudice and leave denied because the PSLRA discourages serial pleadings, the case has narrowed, not broadened in scope, and despite three attempts, Plaintiff has failed to marshal facts supporting a securities fraud such that further amendment now—nearly three years after the case was first filed—would be futile.  *See* MTD 30.

---

amounts to "scheme liability" (*id.*) is of no consequence:  for all of the same reasons set forth herein, the TAC fails to allege that any false statements were disseminated with scienter.  The 20(a) claim also fails because Plaintiff fails to plead a predicate Section 10(b) violation.  MTD 30.

12

Dated: August 21, 2024

**DECHERT LLP**

*/s/ David A. Kotler*
David A. Kotler
1095 Avenue of the Americas
Three Bryant Park
New York, New York 10036
Tel.: (212) 698-3669
Fax: (212) 698-3599
david.kotler@dechert.com

Joni S. Jacobsen (*pro hac vice*)
Angela M. Liu (*pro hac vice*)
35 West Wacker Drive, Suite 3400
Chicago, Illinois 60601
Tel.: (312) 646-5800
Fax: (312) 646-5858
joni.jacobsen@dechert.com
angela.liu@dechert.com

**WILLKIE FARR & GALLAGHER LLP**
Charles D. Cording (*pro hac vice*)
Brady M. Sullivan (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
ccording@willkie.com
bsullivan@willkie.com

*Counsel for Defendants CorMedix*
*Inc., Khoso Baluch, Robert Cook,*
*Phoebe Mounts, John L. Armstrong,*
*Matthew David, and Joseph Todisco*

13