**FREEDMAN NORMAND FRIEDLAND LLP**
Ivy T. Ngo (*pro hac vice*)
Velvel (Devin) Freedman (*pro hac vice*)
1815 Purdy Ave.
Miami Beach, Florida 33139
Telephone: (786) 924-2900
ingo@fnf.law
vel@fnf.law

**POMERANTZ LLP**
Joshua B. Silverman (*pro hac vice*)
Christopher P.T. Tourek (*pro hac vice*)
10 South LaSalle St., Ste. 3505
Chicago, IL 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
ctourek@pomlaw.com

*Counsel for Lead Plaintiff and the Class*

- additional counsel on signature page -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE CORMEDIX INC. SECURITIES LITIGATION | Case No. 2:21-cv-14020 JXN CLW |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR ISSUANCE OF REQUEST FOR**
**INTERNATIONAL JUDICIAL ASSISTANCE (LETTER OF REQUEST)**

This case involves statements about a drug manufactured in Spain by a Spanish contract manufacturing organization that was found to violate FDA standards. This motion seeks limited, targeted discovery from that Spanish entity and the consultants that assisted it.

Lead Plaintiff John V. Levon ("Lead Plaintiff") respectfully requests that the Court issue a Letter of Request pursuant to Federal Rule of Civil Procedure ("Rule") 28(b)(2), 28 U.S.C. § 1781(b)(2), and Chapter I of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"). The proposed Letters of Request, attached hereto as **Exhibit A** and **Exhibit B**, request that the Appropriate Authority of the Ministry of Justice of Spain direct Laboratorios Farmacéuticos ROVI, S.A. ("ROVI")[1] and Barragan BioConsulting, SL ("Barragan") to produce certain documents to be used at trial.

This securities fraud class action centers on Lead Plaintiff's allegations that Defendants[2] made misstatements and omissions regarding the manufacturing readiness and regulatory viability of CorMedix's lead product candidate, Neutrolin (later renamed, and referred to herein, as DefenCath), a solution for catheter-related infections.

As this Court has already held in denying Defendants' motion to dismiss, Defendants placed DefenCath's manufacturing readiness, FDA compliance, and third-party manufacturing operations "in play," and thereby entitled investors to know whether CorMedix's commercial manufacturing organization ("CMO")—ROVI—was in fact capable of meeting FDA standards. *See* ECF No. 130 ("MTD") at 18.

The Letters of Request request discovery squarely directed at those issues. Specifically, Lead Plaintiff seeks ROVI's internal documents concerning its conversations with Defendants, FDA

---

[1] In the last telephonic status conference, Joshua B. Silverman of Lead Plaintiff's counsel mistakenly stated that a letter rogatory had already been issued to ROVI. It has not. Mr. Silverman apologizes for any confusion caused by his error.

[2] CorMedix Inc. ("CorMedix"), Khoso Baluch, Robert Cook, Matthew David, Phoebe Mounts, and Joseph Todisco (collectively, "Defendants").

audits, inspections, Good Manufacturing Practice ("cGMP") standards compliance, manufacturing deficiencies, and remediation efforts relating to DefenCath—evidence that does not exist solely in CorMedix's files and cannot be obtained through domestic discovery mechanisms.  Lead Plaintiff also seeks Barragan's internal documents and communications concerning its assistance to ROVI related to FDA audits and inspections—evidence that also does not exist solely in CorMedix's files and cannot be obtained through domestic discovery mechanisms.

ROVI and Barragan are non-party foreign entities located in Spain and beyond this Court's subpoena power.  Accordingly, a Letter of Request under the Hague Evidence Convention is the only lawful and effective mechanism for obtaining this critical evidence.

## I.    BACKGROUND

### A.  CorMedix's Selection of ROVI and the Concealed Audit

CorMedix is a publicly traded biopharmaceutical company headquartered in New Jersey, focused on the development and commercialization of products for the prevention and treatment of infectious diseases.  ¶ 47.[3]  During the Class Period[4], Defendants focused on securing FDA approval for DefenCath.  ¶ 2.  To manufacture DefenCath for anticipated United States sales, marketing, and commercial distribution, CorMedix was required to maintain a demonstrably consistent manufacturing process for DefenCath, and to oversee and manage any affiliated third-party CMO. ¶ 3.  DefenCath selected ROVI as its CMO in 2017.  ¶ 4.

In 2018, CorMedix commissioned an audit of ROVI.  ¶ 5.  That audit—following a third-party inspection of ROVI's Spanish facilities—identified problems with ROVI facilities.  *Id.*  Lead Plaintiff alleges that despite this conclusion, Defendants concealed the audit and continued to

---

[3] Citations to "¶" refer to the Fourth Amended Complaint that was filed on December 18, 2025 (ECF No. 144).
[4] The purported Class Period is between October 16, 2019 and August 8, 2022. ¶ 1.

represent to investors that CorMedix's manufacturing operations were compliant with FDA standards and commercially ready. *Id.*

### B.  FDA Rejections and Manufacturing Deficiencies at ROVI

In February 2021, the FDA issued its first Complete Response Letter (the "First CRL"), rejecting CorMedix's New Drug Application ("NDA") for DefenCath based on deficiencies at ROVI's manufacturing facility, including inadequate in-process controls. ¶ 20.  Following the First CRL, Defendants repeatedly assured investors that the manufacturing deficiencies were capable of prompt remediation. ¶ 24.  As the Court held, "after the first CRL, CorMedix had a duty to disclose that it could not quickly resolve the identified manufacturing deficiencies to comply with cGMP standards, especially in light of the Audit and the FDA's concerns."  MTD at 18.  Lead Plaintiff alleges that the assurances Defendants provided are actionable because Defendants elected to speak about the manufacturing readiness while omitting material facts concerning the Audit and persistent deficiencies at ROVI. *Id.* at 18-19.

In August 2022, the FDA issued a Second CRL, again citing manufacturing and recordkeeping deficiencies at ROVI. *Id.* at 8; ¶ 33.  CorMedix's stock price dropped significantly following this disclosure. ¶ 36.

### II.    THE COURT HAS AUTHORITY TO ISSUE LETTERS OF REQUEST UNDER THE HAGUE CONVENTION

Federal Rule of Civil Procedure 28(b)(2)(A) and 28 U.S.C. §1781(b)(2) provides that discovery "may be had in a foreign country pursuant to a letter rogatory 'on appropriate terms after an application and notice of it.'" *Abraxis Bioscience, LLC v. Actavis, LLC*, No. 16-1925, 2017 WL 2293347, at *2 (D.N.J. May 25, 2017) (quoting Fed. R. Civ. P. 28(b)(2)(A)).  Letters of Request are formal requests sent by a court to a foreign court asking that a witness residing within that foreign court's jurisdiction either provide documents, a deposition, or both for use in a pending action before

3

the requesting court. *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) ("A letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness."); *see also* 28 U.S.C. § 1781 (permitting the "transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner").

Further, the Hague Convention provides that "[i]n civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Art. 1, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555 (hereinafter "Hague Convention"). Both the United States (which ratified the Hague Convention on August 8, 1972) and Spain (which ratified the Hague Convention on May 27, 1987) are signatories to the Hague Convention. *See* Hague Conf. on Private Int'l Law, Status Table: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, *available at* https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last visited March 12, 2026).

"In deciding whether to issue a letter of request, the court must consider 'the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective.'" *Antamex Int'l, Inc. v. Zurich Am. Ins. Co.*, No. CV2015232JHRAMD, 2022 WL 20679662, at *5 (D.N.J. Aug. 1, 2022) (quoting *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 (1987)). In this regard, a comity analysis requires evaluation of the following factors: (1) the importance of the requested documents and information to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or

4

compliance with the request would undermine important interests of the state where the information is located. *Id.*

Spain has made an Article 23 reservation to the Hague Evidence Convention, objecting to letters of request that seek "pre-trial discovery of documents" in the common-law sense. Even so, "this general comity analysis remains relevant even where the state in question has made an Article 23 reservation," and "[w]hether the Letters Rogatory will be executed in light of Spain['s] . . . Article 23 reservations is a matter for the appropriate Spanish . . . tribunal[], rather than this Court, to determine." *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2014 WL 202102, at *1– 2 (W.D. Wash. Jan. 17, 2014). Consistent with that framework, as explained below, Lead Plaintiff drafted the requested Letters Rogatory with Spain's reservation in mind—narrowly tailored to seek specifically identified, case-critical evidence, rather than broad, U.S.-style document discovery.

Ultimately, "the standard for the issuance of letters rogatory is relatively lenient and discretionary[.]" *Actavis*, 2017 WL 2293347, at *3; *see also DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990) (letter rogatories are "usually granted"). "[S]ome good reason must be shown by the opposing party for a court to deny an application for a letter rogatory." *Jovanovic v. Northrop Grumman Corp.*, No. COV/A/05-4487(DMC), 2008 WL 4950064, at *1 (D.N.J. Nov. 18, 2008).

### III.   ROVI AND BARRAGAN ARE IN POSSESSION OF RELEVANT DOCUMENTS

The documents sought in Lead Plaintiffs' Letters of Request are relevant to this Action. Lead Plaintiff's Fourth Amended Complaint alleges that CorMedix commissioned an audit of ROVI in 2018, which ultimately recommended that ROVI not be used because it could not pass an FDA inspection, but Defendants concealed that audit and the risks at ROVI throughout the Class Period. ¶¶ 4–5, 79–87. Further, the Fourth Amended Complaint alleges that, almost as soon as CorMedix

selected ROVI as its CMO for DefenCath, problems arose with manufacturing, validation, test materials, and the ROVI facility itself, and that these problems continued in one form or another throughout the Class Period.  ¶¶ 4–5, 79–87, 112.  Discovery has also demonstrated that Barragan was contracted by ROVI to assist with the FDA's audits and inspections.

Consequently, ROVI, and through its assistance of ROVI, Barragan, have information vital to the allegations in this Action.  Both likely possess contemporaneous documents and communications regarding ROVI's conversations with Defendants, FDA audits, inspections, cGMP standards compliance, manufacturing deficiencies, and remediation efforts relating to DefenCath, as well as Barragan's assistance to ROVI related to FDA audits and inspections. Such documents are necessary to the litigation of this Action.  Accordingly, Plaintiffs require documents relating to these topics.  *Actavis*, 2017 WL 2293347, at *3 (documents and communications from a third-party manufacturer  concerning its manufacturing for defendant sufficiently relevant to the action which centered around actions at the third-party manufacturer).

## IV.   LEAD PLAINTIFF'S REQUESTS ARE PROPORTIONAL TO THE NEEDS OF THIS CASE AND SUFFICIENTLY TAILORED

As this Court has recognized, ROVI's manufacturing readiness and regulatory compliance are central to this litigation.  But at least some of that evidence exists with ROVI and Barragan, foreign non-parties in Spain beyond this Court's jurisdiction.  Lead Plaintiff, therefore, seeks narrowly tailored Letters of Request pursuant to the Hague Evidence Convention to obtain this evidence through Spain's designated judicial authority.  As set forth in the respective Schedule As to the Letters of Request to ROVI and Barragan ("ROVI Document Requests" and "Barragan Document Requests"),[5] Lead Plaintiff seeks the following specific documents, which are all limited temporally and targeted at specific people and/or events.

---

[5] Plaintiffs will serve certified translations of these materials ROVI and Barragan.

**Division of roles and responsibilities.**  The Commercial Supply Agreement CorMedix executed with ROVI required ROVI to manufacture pursuant to CorMedix's specifications and instructions.  Lead Plaintiff seeks internal contemporaneous ROVI documents about this agreement confirming that at the time of execution ROVI knew and understood its obligation to follow relevant specifications and instructions.  *See* ROVI Request No. 1.  Beyond asking about the agreement itself, Lead Plaintiff also seeks documents related to certain concrete examples of how the parties managed their respective roles throughout the relationship.  For instance, one request seeks internal correspondence related to ROVI's September 2020 understanding of its responsibilities for batch record release and QA/QC functions under 21 CFR Part 211 for products destined for the United States market.  *See* ROVI Request No. 2.  Another seeks correspondence from the Fall of 2020 regarding FDA's expected Pre-Approval Inspection (PAI).  *See* ROVI Request No. 3.

**ROVI's response to 2019 Quantum Audit.**  In the fall of 2019, Quantum audited ROVI and determined it would not pass an FDA PAI. ROVI's internal follow-up communications responding to Jack Armstrong's November 4, 2019 email to Michel Guillory and Guillermo Paraja Arrechea regarding the October 2019 audit findings, including any internal discussions of ROVI's plan to address the critical observations identified.  *See* ROVI Request No. 4.

**ROVI's response to FDA concerns and findings.**  There were several episodes over the years where ROVI received or expected to receive negative feedback from the FDA identifying ROVI's deficiencies.  Lead Plaintiff seeks specific documents related to the ROVI's correspondence internally, with CorMedix, and with the FDA about these episodes.  ROVI Request Nos. 5-10; Barragan Request No. 1.

**Consultant's work related to Second CRL.**  Anticipating ROVI's shortcomings resulting in the Second CRL, CorMedix engaged another third-party consultant (Barragan) to ensure compliance with cGMP requirements and respond to the forthcoming FDA-483 letters.  Lead Plaintiff

is entitled to know what ROVI and the Consultant discussed and how the shortcomings in 2022 relate to ROVI's prior shortcomings in the First CRL from 2021. Notably, CorMedix's existing consultant seemed unaware that CorMedix retained the consultant for ROVI and was unimpressed with the initial results. Lead Plaintiff seeks documents related to what Barragan determined and communicated to ROVI from both ROVI and Barragan. *See* ROVI Request No. 13; Barragan Request No. 1.

**Coordinating public disclosures in June/July 2022.** Anticipating the negative FDA findings, in June 2022, CorMedix reached out to ROVI about how to coordinate the language of its upcoming disclosures because ROVI is a public company, pushing to learn if it would make any public response of its own. This followed just a few days after CorMedix complained internally that it would be helpful to have information from Rovi on its disclosure plans and messaging. Lead Plaintiff seeks ROVI's internal emails from June 1, 2022 through July 31, 2022, discussing CorMedix's request to coordinate disclosure language regarding FDA findings related to these emails. *See* ROVI Request No. 11.

**ROVI's responses to CorMedix delays concerns.** In July 2021, CorMedix was concerned that an FDA inspection of ROVI would further delay the release of DefenCath and was looking for ways to pressure ROVI. Lead Plaintiff seeks confirmation of how ROVI responded to this pressure and how it followed Defendants' directions. *See* ROVI Request No. 12.

These narrow requests are also informed by other observations about how CorMedix and ROVI interacted that imply ROVI will have important internal-only documents and communications about those interactions. For instance, CorMedix had meetings with ROVI covering topics they did not want to put into writing for fear of getting into a potential war of words. The parties also had weekly meetings that CorMedix pushed for because of concerns that ROVI could not meet certain timelines.

Courts routinely issue a letter of request for this type of information and in these circumstances. First, Lead Plaintiff's explanation meets the relatively low bar of "a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Compagnie des Grands Hotels d'Afrique S.A. v. Starman Hotel Holdings LLC*, No. CV 18-00654 RGA, 2019 WL 3391971, at *3 (D. Del. July 26, 2019) (internal quotation marks omitted). And, particularly because they are drafted in light of Spain's objection, they are sufficiently specific and designed to lead to the discovery of admissible evidence. *See Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 398-99 (3d Cir. 2021); *Actavis*, 2017 WL 2293347, at *3. Indeed, Lead Plaintiff's requests speak to the heart of this Action, and thus "the importance of the documents to the litigation weighs in favor of disclosure when there is a substantial likelihood that the documents will prove to be important to the prosecution of plaintiffs' claims." *Giorgi Glob. Holdings, Inc. v. Smulski*, No. CV 17-4416, 2020 WL 2571177, at *1 (E.D. Pa. May 21, 2020). The requests are also proportional to the needs of the class-action nature of the case and the resulting damages. *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 CIV. 2106 (ER), 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018) ("Because there is no dispute that the discovery Defendant seeks is relevant . . . and because significant sums of money are at stake in this matter, the Court finds that the request is relevant and proportional to the needs of the case.").

Still, if any requests are found to be too broad, they would be narrowed by the appropriate judicial authorities in Spain. *See Arcelik*, 856 F. App'x at 399 ("While some discovery may be more intrusive than other . . . the treaty process may be more suitable to burdensome requests than domestic discovery rules"); *Pronova BioPharma Norge AS v. Teva Pharms. USA, Inc.*, 708 F. Supp. 2d 450, 453 (D. Del. 2010) ("If the defendants' requests suffer from such maladies under the laws of Norway or Sweden, then the requests will presumably be narrowed by the appropriate judicial authorities in those countries.").

Lead Plaintiff also meets the other factors for issuing the letters of request. The documents are created and maintained outside of the United States by a foreign entity and are not easily obtainable. *See Arcelik*, 856 F. App'x at 399 (noting that the information originated outside of the United States and holding that this factor did not preclude issuance of letters of request where the evidence was otherwise unobtainable); *see also Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 793 (S.D.N.Y. 2012) ("where 'the information cannot be *easily obtained* through alternative means,' the origin of the information can be 'counterbalance[d]' by the inability to obtain the information through an alternative means, thus favoring disclosure." (internal citation omitted)). ROVI is not a party to this action and is not subject to this Court's jurisdiction. *See Antamex*, 2022 WL 20679662, at *6; *Pronova*, 708 F. Supp. 2d at 453 (finding that resorting to the Hague Evidence Convention was appropriate where the individuals possessing the relevant information were non-parties located abroad, had not voluntarily subjected themselves to discovery, and were not otherwise subject to the court's jurisdiction).

Finally, no considerations of international comity weigh against issuing the Letters of Request. The United States has an interest in the enforcement of its federal securities laws, and given the importance of the documents sought to this litigation, issuing a letter of request will serve that national interest. Nothing about the nature of these documents implicates Spain's government or national security. *See Arcelik,* 856 F. App'x at 400 (noting that the protection of the foreign state's interests is committed to the courts of the state where the information is located).[6]

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the Motion

---

[6] Any documents produced by ROVI or Barragan pursuant to this motion will be covered by the Confidentiality Order, entered in this Action on September 12, 2025. *See* ECF No. 136. Lead Plaintiff will also attach a copy of the Confidentiality Order to any Letters Rogatory issues to ROVI and Barragan.

for Issuance of a Letter of Request.

Dated:  March 19, 2026                              Respectfully Submitted,

                                           **POMERANTZ LLP**

                                           */s/ Brian Calandra*

Joshua B. Silverman (*pro hac vice*)
Christopher P.T. Tourek (*pro hac vice*)
10 South LaSalle St., Ste. 3505
Chicago, IL 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
ctourek@pomlaw.com

-and-

Brian Calandra
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
bcalandra@pomlaw.com

**FREEDMAN NORMAND FRIEDLAND LLP**
Ivy T. Ngo (*pro hac vice*)
Velvel (Devin) Freedman (*pro hac vice*)
1815 Purdy Ave.
Miami Beach, Florida 33139
Telephone: (786) 924-2900
ingo@fnf.law
vel@fnf.law

*Counsel for Lead Plaintiff and the Class*

11